Civil Case No. 17-70786

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

KABANI & COMPANY, INC., HAMID KABANI, CPA, MICHAEL
DEUTCHMAN, CPA, KARIM KHAN MUHAMMAD, CPA

Petitioners,

*versus*

U. S. SECURITIES AND EXCHANGE COMMISSION,

Respondent.

---

**PETITIONERS' OPENING BRIEF**

---

JOHN ARMSTRONG
Cal. Bar. No. 183912
**HORWITZ + ARMSTRONG**
14 Orchard Road, Suite 200
Lake Forest, CA 92630
TELEPHONE: (949) 540-6540
FACSIMILE: (949) 540-6583
*Attorney for Petitioners*

# Table of Contents

1. Introduction ................................................................................9

2. Statement of Facts ......................................................................14

a. Background of the Kabani Firm...................................................14

b. The PCAOB Investigation ..........................................................17

c. The Disciplinary Proceedings .....................................................18

d. Saeed Settles With the PCAOB ...................................................19

e. The Denial of Petitioners Expert Witness.....................................21

f. The Amended Initial Decision .....................................................23

g. Petitioner's Appeal for Review Addressed the Procedural and Substantive

   Problems Arising From the Amended Initial Decision ..............................25

h. Motion for Recusal of PCAOB ....................................................29

i. PCAOB Confirms Order..............................................................30

3. Petitioners Have a Right to an Appeal the PCAOB's Sanctions – And the

   Only Issue on Appeal is the PCAOB's Affirmance of the Failure to

   Cooperate and AS3 Since All Other Charges Were Dropped for Insufficient

   Proof ......................................................................................30

4. The PCAOB's Findings Fail to Support a Strong Inference of Scienter.....31

5. The PCAOB's Disciplinary Proceedings Were Unconstitutional and
   Violated Petitioners Procedural Due Process Rights ................................... 37

   a. Petitioners Have a Property Interest in Their Profession ...................... 40

   b. The Statute of Limitations Expired Before The PCAOB Prosecuted Its
      Action Against Petitioners .................................................................... 42

   c. Petitioners Were Denied Adequate Procedural Protections by the
      Hearing Officer and the PCAOB in Review ........................................... 43

      i. The PCAOB's Published Settlement for Saeed Unfairly
         Prejudiced Petitioners, Subjected Them to Bias, and Violated
         Their Due Process Rights ........................................................... 43

      ii. Petitioners Were Prohibited From Designating a Substitute
          Rebuttal Expert After Their Initial Expert Refused to Testify for
          Lack of Payment ........................................................................ 45

      iii. The PCAOB Improperly Failed to Present or Investigate
           Available Exculpatory Evidence ................................................. 49

      iv. The Hearing Officer and PCAOB Improperly Shifted the Burden
          of Proof of Petitioners Causing Legal Error ................................. 50

      v. The Investigation and Disciplinary Proceedings Went on For
         Several Years Allowing Memories to Fade, Evidence to Be Lost
         or Manipulated, and Witnesses Became Difficult to Locate ........ 54

vi.     The Originally Appointed Hearing Officer Was Subsequently Replaced With Someone With No Auditing or Accounting Experience ..................................................................56

vii.    Petitioners Were Deprived of a Jury Trial....................................57

6.  The PCAOB Misrepresented the Creation/Modification Dates of Petitioners' Work Papers After Petitioners Provided the PCAOB With *Reformatted* Replacement Files Because the PCAOB Had Trouble Accessing the Original Files .........................................................58

7.  The Hearing Officer Issue and the Board Affirmed Draconian Sanctions and Penalties Given Petitioners Clean History and Failed to Consider Imposing Additional Training and Education as an Alternative Penalty to Promote Compliance With These Rules ....................................................60

8.  Conclusion....................................................................................67

CERTIFICATE OF COMPLIANCE ...............................................................69

CERTIFICATE OF WORD COUNT ...............................................................70

# Table of Authorities

## Cases

*Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996).....................................46

*Armstrong v. Manzo*, 380 U.S. 545 (1965)..................................................37

*Bell v. Burson*, 402 U.S. 535 (1971)...........................................................41

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) . 37, 39, 40

*Brady v. Maryland*, 373 U.S. 83 (1963)......................................................31

*Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d

   971 (9th Cir. 1998).....................................................................................38

*CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158

   (S.D.N.Y. 1990).........................................................................................33

*Doggett v. U.S.*, 505 U.S. 647 (1992) ..........................................................54

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)....................................32

*Foss v. National Marine Fisheries Service*, 161 F.3d 584 (9th Cir. 1998)

..........................................................................................................................39

*In re Longtop Financial Technologies Ltd. Securities Litigation*, 939

F.Supp.2d 360 (2013)............................................................................32, 35

*In re Niles*, 106 F.3d 1456 (9th Cir. 1997)..................................................51

*In re Scottish Re Group Securities Litigation*, 524 F.Supp.2d 370

   (S.D.N.Y. 2007) ....................................................................... 35

*Jones v. City of Modesto*, 408 F.Supp.2d 935 (E.D. Cal. 2005). ............... 41

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001). ........................................ 33

*Klopfer v. State of N.C.*, 386 U.S. 213 (1967) ........................................... 54

*Kyles v. Whitley*, 514 U.S. 419 (1995) ....................................................... 49

*Landes v. Skil Power Tools*, 2013 WL 6859837, at *3 (E.D. Cal.,

   December 30, 2013) ................................................................. 46

*Larez v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) ....................................... 51

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................... 38, 39, 43

*Matter of Battaglia*, 653 F.2d 419 (9th Cir. 1981) .................................... 51

*Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1 (1978) ....... 37

*Meridian Horizon Fund, LP v. KPMG (Cayman)*, 387 Fed.Appx 636 (2d

Cir. 2012) ................................................................................. 35

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................ 37

*One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965) ............ 54

*Preston v. U.S.*, 923 F.2d 731 (9th Cir. 1991) ........................................... 44

*S.E.C. v. Shanahan*, 504 F.Supp.2d 680 (E.D. Mo. 2007) ........................ 55

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009)......................................................................................... 33

*Stephenson v. PriceWaterhouseCoopers, LLP*, 482 Fed.Appx 618 (2d Cir. 2012) ....................................................................................... 35

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005)................. 41

*U.S. v. Sanchez*, 520 F.Supp. 1038 (S.D. Fla. 1981) ................................ 55

*United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992).......................... 31

*Wooddell v. International Broth. Of Elec. Workers, Local 71*, 502 U.S. 93 (1991) ............................................................................................. 57

## Statutes

17 CFR § 201.440(a) ................................................................. 30

28 U.S.C. § 455(a) .................................................................... 44

15 U.S.C.A. § 7215(c)(4).............................................................. 62

15 U.S.C.A. § 7215(c)(5)(A)-(B)...................................................... 63

28 U.S. Code § 1658.................................................................. 42

## Rules

PCAOB Rule 52(a)(1) ............................................................. 50, 51

PCAOB Rule 5110 ........................................................................ 44

PCAOB Rule 5204 ........................................................................ 44

PCAOB Rule 5204(a) .................................................................... 50

PCAOB Rule 5300 ................................................................. 60, 63

Rule 16(e) of Federal Rules of Civil Procedure ........................ 46

## 1. __INTRODUCTION__

Petitioners KABANI & COMPANY, INC., HAMID KABANI, CPA, MICHAEL DEUTCHMAN, CPA, KARIM KHAN MUHAMMAD, CPA (collectively "Petitioners") seek review by the Ninth Circuit Appellate Court regarding sanction levied by the Public Company Accounting Oversight Board ("Board" or "PCAOB").

Despite finding no material errors with its reviewed audits, and despite having no previous history of discipline, the PCAOB imposed substantial monetary penalties, including a lifetime bar against HAMID KABANI ("Kabani") and barred the other Petitioners for a period of years. This decision was based on some inconsistencies in the metadata in backup documents produced to the PCAOB, and because a disgruntled former employee saw an opportunity to hurt his ex-firm while protecting himself from his own fraudulent conduct by seeking and obtaining leniency from the PCAOB in exchange for testifying against his former firm.

Petitioners contend that these sanctions were based upon insufficient evidence that led to the incorrect factual findings, and that the PCAOB's findings were based on innuendo and conjecture, and

resulted from improper bias in that the Hearing Officer who presided

over the hearing was given information that tainted his finding *before*

the hearing, and lacked sufficient knowledge and experience in

accounting and auditing[1], resulting in the hearing officer making

erroneous legal conclusions regarding the ultimate issue based on the

evidence submitted.

Moreover, Petitioners contend that they were deprived of their

due process rights and that the administrative forum in which they

were forced to defend themselves was unfairly biased, unconstitutional,

and constructed in a manner that violates vested, protected property

rights and constitutionally protected, fundamental fairness, such that

---

[1] On review of the PacificNet, Inc., audit ("PACT"), PACT filed its Form 10k for
2007 on June 12, 2008 which was later amended on July 3, 2008. On July 3, 2008,
PACT also filed its 2008 first quarter Form 10Q. PACT's 2008 second quarter
Form 10Q was filed on August 18, 2008. To file its first and second quarter Form
10Q, PACT had to have 2007 audited numbers on file to carry forward balances
to 2008 before filing its first and second quarter reviews. If 900 documents were
added later, then PACT has to reconcile its second and first quarter numbers
backwards to tie back to the 2007 audited ending balance sheet number before the
end of June 30, 2008 and March 31, 2008. The PCAOB contends that 900
documents were added between September and October 2008 which is after
March and June 2008 in such a way that those tie to 2007 audited balances after
filing first two quarterly reviews is baseless, especially when the Inspection team
did not notice any anomaly (*see also*, Amended Initial Decision, Appellants'
Excerpts of Record "ER" Vol. 50, Doc. No. 950 at fn. 387; Khan Petition for
Review, ER Vol. 50, Doc. No. 952 at pp. 10563-10564.)

a miscarriage of justice resulted so that reversal is not warranted but required.

Even if reversal and a new trial were unwarranted, the sanctions levied against Petitioners were unconstitutionally or otherwise excessive based on the evidence supporting them.

The PCAOB is supposed to be a regulatory body that corrects and improves audit procedures, and not a death squad for auditors caught in its sights. That is, in order to find that Petitioners intentionally backdated work papers, the PCAOB's expert had to *infer* based upon his review of the metadata, that the work papers themselves were backdated to hide their created or modified date other than the dates on the physical files. Then, the PCAOB's expert would have to *infer* that Petitioners did this both intentionally and for the sole purpose of defrauding the PCAOB, because the PCAOB's expert could not think of any other reason why the metadata on some of the computer files the PCAOB reviewed could be different.

Regrettably, the Hearing Officer blindly adopted this self-serving conclusion based on inference upon inference without

supporting or corroborating evidence, and gave it disproportionate weight— especially when the PCAOB itself hired this expert to reach such conclusion to support the PCAOB's prosecution.

Additionally, the Hearing Officer credited the testimony of Raheen Saeed, who admittedly had a grudge with Petitioners, who told witnesses of his desire to teach Kabani a lesson because Kabani did not promote him to partner with Kabani's Firm. His testimony was consistently inconsistent, as were his filings and responses to the PCAOB, and he even admittedly lied to the PCAOB previously to protect his own self-interest. His testimony should have been viewed with great caution because the PCAOB offered him leniency if he agreed to help the PCAOB bring down the Kabani Firm as well as the individual defendants/Petitioners.

Notably, the record shows that Saeed's testimony was critical to the Hearing Officer's final determinations, yet the Hearing Officer questioned his motives, found him to be unreliable, and noted that the PCAOB found he had violated various audit standards as the concurring partner, even backdating documents

without the Kabani firm's knowledge to make it seem like he had performed work contemporaneous with his review that Kabani paid him to do timely though he did not. Despite these ethical and professional violations, the Hearing Officer and the PCAOB gave undue weight to his testimony which, according to the PCAOB, was the most persuasive evidence for ruling against the Kabani Firm.

Saeed was charged with the same violations as the other defendants/ Petitioners in this matter, yet he was able to reach a settlement with the PCAOB shortly after defendants/ Petitioners were charged with violations of the PCAOB rules under the Sarbanes Oxley Act and related audit standards. Saeed only received 18 months of probation and no monetary penalty while the other defendants/ Petitioners were given a lifetime bar[2] and fined in total $155,000.00. Thus, the disparity in sanctions between Petitioners and Saeed provides only one reasonable inference…. that Saeed provided slanted and untruthful testimony to the PCAOB to assist the PCAOB

---

[2] Petitioners Deutchman and Khan are allowed to petition for reinstatement, but reinstatement is discretionary and so the bar is a de facto lifetime bar as to those persons. Order Summarily Affirming Findings of Certain Violations and Imposition of Sanctions for Those Violations, ER Vol. 1, Doc. No. 961, at p. 199.

in its prosecution of Petitioners to save his own skin, and making his veracity questionable.

Moreover, the sanctions imposed are Draconian. None the Petitioners have ever been sanctioned previously. There was nothing wrong with the audit itself at issue. The difference in metadata had to do with how documents were produced, and the PCAOB failed to investigate or acknowledge other computer generated contemporaneous documents showing that the work in physical work papers was actually done on the dates indicated on the work papers themselves.

## 2.   **STATEMENT OF FACTS**

Given the voluminous nature of the record, which, Respondent represents has been provided to the Securities and Exchange Commission, Petitioners will reference only the facts relevant to the arguments arising from this appeal hereunder.

### a. BACKGROUND OF THE KABANI FIRM

Kabani & Company, Inc. ("K & Co." or the "Firm") is a professional corporation incorporated in the State of California and headquartered

14

in Los Angeles, California. *See* Amended Initial Decision ("AID"), ER[3]

Vol. 50, Doc. No. 950, at p. 10460. The Firm is registered with the

Public Company Accounting Oversight Board ("PCAOB"); licensed by

the California Board of Accountancy; and is a member of the AICPA

practice section. *Id.* at pp. 10460-10461. The firm is the only CPA firm

based in the United States that has registered its branch office in the

People's Republic of China, with the PCAOB thereby opening the files

produced by the Chinese offices on a voluntary basis.

Hamid Kabani ("Kabani") is a certified public accountant

licensed by the California Board of Accountancy. *Id.* at p. 10461.

Kabani was the founder of the Firm and was, at all relevant times,

the sole shareholder and head of the Firm. *Id.*

Michael Deutchman ("Deutchman") is a certified public

accountant licensed by the California Board of Accountancy. *Id.* at p.

10462. Mr. Deutchman was the Firm's director of audit and

accounting and participated in monitoring the Firm's quality and

control functioning. *Id.*

---

[3] Cites to "ER" refer to the Excerpts of Record

Karim Khan Muhammad ("Khan") is a certified public accountant licensed by the California Board of Accountancy. *Id*. at p. 10463. Khan was an auditor with the Firm and generally responsible for overseeing the general audit work that was performed. *Id*.

Reehan Saeed ("Saeed") was a certified public accountant licensed by the California Board of Accountancy. *Id*. Mr. Saeed is also a licensed attorney who was admitted to the State Bar of California in 2006. *Id*. at p.104634.

In 2005, the Firm installed computer software and equipment that would allow the Firm to utilize a paperless audit system. *See* Kabani Affidavit, ER Vol. 50, Doc No. 44(b), at ¶10. This paperless system allowed firm staff to create and store multiple versions of work papers on their laptops or on a commonly accessible "N:\ Drive." Additionally, the Firm simultaneously installed a "Q:\ Drive" under which final, permanent audit files were stored. *Id.* at ¶11. Only Kabani and the Network Administrator had access to the Q:\ Drive. *Id.*

16

### b. THE PCAOB INVESTIGATION

On June 2, 2008, the PCAOB notified the Petitioners that the

Division of Registration and Inspection ("DRI") would conduct an

inspection of the Firm's audits. *See* AID, ER Vol. 50, Doc. No. 195 at p.

10471. On July 14, 2008, the PCAOB further advised Petitioners' that

the inspection fieldwork would begin at the Firm's office on or about

October 20, 2008. *Id*. at p. 10472.

On October 20, 2008, PCAOB inspectors commenced their field

work to inspect the work papers for the audits of PacificNet, China

Yida, and China Yongxin (and five other issuers). *Id*. at p. 10482.

On or about July 28, 2011, the Division of Enforcement and

Investigations ("DEI") wrote a letter to Petitioners advising them

that it would recommend that the Board initiate disciplinary

proceedings against Petitioners for violations of PCAOB Rule 4006,

Auditing Standard No. 3, and other rule violations relating to

quality control.

### c. THE DISCIPLINARY PROCEEDINGS

On June 15, 2012, the Public Company Accounting Oversight Board ("PCAOB") issued an Order Instituting Disciplinary Proceedings ("OIP") against the Firm, Kabani, Deutchman, Khan, and Saeed.

The OIP charged the Firm with violating PCAOB Rule 4006, Duty to Cooperate with Inspectors, in connection with the 2008 inspection of the PacificNet Audit, China Yida Audit, and/or China Yongxin Audit. *See* AID, ER Vol. 50, Doc. No. 195 at p. 10466. Kabani, Deutchman, and Khan were each individually charged with violating PCAOB Rule 4006, as well as PCAOB Rule 3100, Compliance with Auditing and Related Professional Practice Standards in connection with those audits. *Id*. However, the PCAOB did not admonish Kabani for any failure to conduct the audit in accordance with the PCAOB rules **or any deficiency in the audit opinion issued.**

The OIP charged Saeed with violations of PCAOB Rule 4006 in connection with the PacificNet Audit, the China Yida Audit, and /or

the China Yongxin Audit. *See* OIP, ER Vol. 1, Doc. No. 1, at p. 25. Additionally, the OIP charged Saeed with violating PCAOB Rule 3100 in connection with the Hartcourt Audit and NetSol Audit. *Id*.

### d. SAEED SETTLES WITH THE PCAOB

On or about May 22, 2013, the PCAOB entered into a settlement with Saeed and published this settlement on its website entitled Notice of Settlement; and Order Making Findings and Imposing Sanctions (as to Respondent Saeed), (the "Saeed Order"), specifically in the Kabani Firm's individual reporting page. This Settlement only involved the Firm's audits of Hartcourt and NetSol. *See* Kabani Recusal Motion, ER Vol. 48, Doc. No. 953, at p. 9837.

In sum, the published order stated that:

⟩ "Saeed was an employee of … Kabani & Company, Inc." (Saeed Order, ER Vol. 1, Doc. No. 134, at ¶ 1).

⟩ Kabani & Company "released its audit reports" before Saeed performed his concurring partner reviews. (Saeed Order, ER Vol. 1, Doc. No. 134, at ¶¶ 2, 7, 12).

⟩ Saeed sent concurring partner review comments after the Hartcourt 10-K was filed. (Saeed Order, ER Vol. 1, Doc. No. 134, at ¶ 7).

⟩ The comments concerned significant omissions and deficiencies in the Hartcourt work papers related to basic planning and substantive audit procedures – calling into question the actual Kabani & Company audit. (Saeed Order, ER Vol. 1, Doc. No. 134, at ¶ 8).

⟩ Saeed backdated concurring partner review comments and his sign off. (Saeed Order, ER Vol. 1, Doc No. 134 at ¶ 13).

*See* Notice of Settlement; and Order Making Findings and Imposing Sanctions (as to Respondent Saeed), ER Vol. 1, Doc. No. 134, at pp. 79-82. *See also* Kabani Recusal Motion, ER Vol. 48, Doc. No. 953, at pp. 9837-9838.

## e. THE DENIAL OF PETITIONERS EXPERT WITNESS

On or about April 26, 2013, Petitioners filed a motion requesting an order allowing Petitioners to present the testimony and report of a substitute expert. The Hearing Officer denied Petitioners request for lack of good cause under Federal Rule of Civil Procedure, Rule 16. *See* Order Denying Motion to Present Testimony, ER Vol. 1, Doc. No. 130, at p. 72.

The Hearing Officer addressed Petitioners' request to counter-designate a substitute expert witness in the AID as follows:

"Prior to the hearing, the Kabani Respondents identified an expert witness and provided his report to the DEI. After the appearance of new counsel, however, they filed a motion on April 26, 2013, seeking permission to present the expert testimony and written report of a different expert. By that time, however, all expert-related pre-hearing deadlines (which had previously been extended) had expired. Further, the motion provided no details concerning the substance of the proposed new expert's anticipated testimony. The

Hearing Officer found that the Kabani Respondents had failed to provide good cause, exigent or unforeseen circumstances justifying another modification to the expert deadlines less than two months before the hearing. The Hearing Officer claimed that the Kabani Respondents had ample opportunity to select an expert and submit written reports and, through prior counsel, had availed themselves of this opportunity. Accordingly, the Hearing Officer denied the motion. *See* Order Denying Motion to Present Testimony dated May 8, 2013, ER Vol. 1, Doc. No. 130. Thereafter, the hearing schedule was extended for the explicit purpose of permitting the Kabani Respondents' named expert to testify by video conference. *See* Order dated June 20, 2013, ER Vol. 50, Doc. No. 156. Nevertheless, the Kabani Respondents were unable to secure his attendance and he did not testify. *See* Order dated June 26, 2013, ER Vol. 50, Doc. No. 158. *See also* Transcript dated June 28, 2013, ER Vol. 16, Doc. No. 159 at 4393." *See also* AID, ER Vol. 50, Doc. No. 195, at pp. 10483-10484.

### f. THE AMENDED INITIAL DECISION

On or about April 22, 2014, the Hearing Officer issued his Amended Initial Decision. This decision was issued approximately 10 months after the hearing. [4]

The Hearing Officer's findings state that he believed the PCAOB's expert provided "Key Evidence demonstrating that modifications were made after the documentation completion deadlines." *See* AID, ER Vol. 50, Doc No. 950, at p. 10482. The Hearing Officer stated that he found the PCAOB's expert "qualified" and that "his methodologies were reasonable; his findings were detailed and meticulous; and his conclusions were well- reasoned and well-supported." *Id.* at 10483. Further, that "his findings and conclusions were also consistent with the email communications and Saeed's testimony evidencing a plan to alter the audit work papers in anticipation of the PCAOB inspection. *Id.*

---

[4] PCAOB Rule 5024 generally contemplates that ah Hearing Officer's decision will be issued within 60 days after the deadline for post-hearing briefs.

The Hearing Officer further stated that "Significantly, Lewis's [expert] report and testimony went unrebutted. Respondents did not call an expert to challenge Lewis's findings and conclusions." *Id.*

With respect to Saeed's testimony against Petitioners, which was submitted after Saeed had entered into a settlement agreement with the PCAOB, the Hearing Officer noted that he had concerns regarding Saeed's conduct and motives. *Id*. at 10511. The Hearing Officer determined that "Saeed clearly engaged in wrongdoing at the Firm by backdating documents and he altered a document before producing it to the PCAOB in order to "distance" himself from alleged wrongdoing." *Id*. Nevertheless, "the Hearing Officer found [Saeed] credible on the major aspects of his testimony." *Id*.

In the AID, the Hearing Officer relied upon all of Petitioners' investigative testimony and disregarded Petitioners' hearing testimony. *See* Khan Petition for Review, ER Vol. 50, Doc. No. 952, at p. 10558. However, in regards to Saeed, the Hearing Officer did not state whether he was relying on Saeed's investigative testimony, hearing testimony, or both. *Id*.

24

### g. PETITIONER'S APPEAL FOR REVIEW ADDRESSED THE PROCEDURAL AND SUBSTANTIVE PROBLEMS ARISING FROM THE AMENDED INITIAL DECISION

After the Amended Initial Decision was issued, Petitioners filed a Petition for Review with the PCAOB. The Petition contested multiple factual findings in the Hearing Officer's Amended Initial Decision as follows:

First, the Hearing Officer determined that Kabani provided Saeed with a list of company names and told them that those files had been selected for his review. *See* Kabani Petition for Review, ER Vol. 47, Doc. No. 951, at ¶ 11. Petitioners objected to this finding on the grounds that Kabani's email to Saeed asked Saeed to provide 5 clients that Saeed had selected for the internal inspection. *Id*. Saeed's final report presented to Kabani expressed satisfaction with the firm's quality control process and did not find any violations of any PCAOB rules or regulations.

Second, the Hearing Officer determined that "By August 17, 2008 – three weeks after the July 27, 2008, document completion date – the Firm had still not assembled the final set of work papers for the PacificNet Audit for retention in Engagement Manager."[5] *Id.* at ¶13. Petitioners objected to this finding on multiple grounds, including but not limited to Petitioners argument that Saeed was not provided with the final audit work papers. *Id.*

Third, the Hearing Officer determine that "Key evidence demonstrating that modifications were made after the documentation completion deadlines." *Id.* at ¶ 33. Petitioners objected to these factual findings on the grounds that the PCAOB's expert never looked at the contents of the Q:\ Drive which housed the Firm's annual final audit files and instead relied upon the files that were produced by

---

[5] Importantly, PACT filed an amended 10K on July 3, 2008 and based on the amended 10K, the 45 day period ended on August 17, 2008. Therefore, the documentation completion date was not July 27, 2008. (Khan Answer ER Vol. 1, Doc. No. 27, at 10). Initial Decision overlooked the documentation completion date under AS 3 (Khan Petition, ER Vol. 50 Doc. No. 952, at p. 10553).

Saeed on a flash drive without personal knowledge of whether those were the actual final audit files. [6] *Id.*

Fourth, the Hearing Officer determined that the PCAOB's expert was correct in finding intentional backdating of machine system clocks. *Id.* at ¶ 37. Petitioners objected on the grounds that there was an insufficient basis for the expert to conclude there was "intentional" backdating.[7] *Id.*

Fifth, the Hearing Officer determined that the PCAOB's expert testimony went unrebutted. *Id.* at ¶ 40. Petitioners objected on the grounds that the files the expert reviewed were produced by Saeed

---

[6] In fact, the PCAOB's expert agrees that by comparing PACT Saeed to PACT Kabani 2011, he cannot conclude what is in PACT Kabani 2010 and he would need to review PACT Kabani 2010. (ER Vol. 12, Doc. No. 152, Tr. (Lewis) 3187:21 to 3188:14). The AID completely ignored this argument. (Khan Petition, ER Vol. 50, Doc. No. 952, at p. 10557).

[7] To illustrate the PCAOB's expert's incorrect findings, the number of late documents in PACT Kabani 2011 decreased to 54 from 82 in PACT Saeed 2010. If there was an untimely addition of over 900 documents, then the number of late documents added to PACT Kabani 2011 should have increased, not decreased. There was no explanation provided by either the DEI or its expert in his report and the AID does not address this discrepancy. (Khan Petition, ER Vol. 50, Doc. No. 952, at p. 10560.)

and there was no evidence that those were the final audit work papers. *Id.*

Sixth, the Hearing Officer found Saeed's testimony to be credible. *Id.* at ¶ 58. Petitioners objected on multiple grounds, including but not limited to Petitioners testimony at the hearing and Kabani's lie detector test results[8] which support that he did not backdate work papers. *Id.*

Seventh, the Hearing Officer determined that Petitioners never proved that Saeed was reviewing the documents for quality control purposes or that he was reviewing non-final revisions of the audit work papers. *Id.* at ¶62. Petitioners objected on multiple grounds including that the Hearing Officer had misplaced the burden of proof. *Id.*

Eighth, the Hearing Officer repeated that the Petitioners did not call an expert to rebut the PCAOB's expert testimony. *Id.* at ¶ 85. Petitioners objected to this finding on the grounds that they had

---

[8] See Motion to Supplement Record with Results of Polygraph Examination, ER Vol. 49, Doc. No. 958.

an expert present at the hearing who was willing to testify, but the Hearing Officer would not allow his testimony. *Id*.

Ninth, the Hearing Officer claimed that Kabani requested and reviewed the transcript of his investigative testimony (Tr. (Kabani), ER Vol. 13, Doc. No. 152 at 3467-68, ER Vol. 14, Doc. No. 152 at 3703-05) and did not thereafter—until the hearing—present a different version of events to the DEI. *See* Khan Petition, ER Vol. 50, Doc. No. 952, at pp. 10552-10595. Petitioners objected to this incorrect finding since Kabani filed a motion for summary dismissal and denied the substitute file was not the final file reviewed by the DRI during the October 2008 inspection. *Id*. at pp. 10555-10556.

### h. MOTION FOR RECUSAL OF PCAOB

On or about May 27, 2014, Petitioners filed a motion for recusal demanding that the PCAOB recuse itself from reviewing this action given the factual findings that had already been published regarding the Firm's audits.

### i. PCAOB CONFIRMS ORDER

On or about January 22, 2015, the PCAOB confirmed the order with respect to the allegations of failure to cooperate with a board inspection. (PCAOB Order Summarily Affirming Sanctions, ER Vol. 1, Doc. No. 961 at p. 199.) Importantly, **the PCAOB sets aside** other findings in the amended initial decision with respect to other findings therein. *Id*.

### 3. PETITIONERS HAVE A RIGHT TO AN APPEAL THE PCAOB'S SANCTIONS—AND THE ONLY ISSUE ON APPEAL IS THE PCAOB'S AFFIRMANCE OF THE FAILURE TO COOPERATE AND AS3 SINCE ALL OTHER CHARGES WERE DROPPED FOR INSUFFICIENT PROOF

Under 17 CFR § 201.440(a), any person who is aggrieved by a determination of PCAOB with respect to sanctions may file an application for review with the Securities and Exchange Commission.

Here, the record reflects that the PCAOB affirmed the Hearing Officer's findings only with respect to the ruling that Petitioners failed to cooperate with a Board inspection, a violation of Auditing

Standard No. 3, and violation of Rule 3100. This ruling is the basis for Petitioners' application for review.

## 4.   THE PCAOB'S FINDINGS FAIL TO SUPPORT A STRONG INFERENCE OF SCIENTER

Since *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), federal prosecutors have been required to disclose exculpatory evidence to the defense uncovered in the prosecutions investigation. The PCAOB is part of the SEC's quasi-criminal enforcement of the securities laws and regulations. As summarized in *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992), nearly every federal court has determined that where the prosecution and investigative arms of law enforcement are closely aligned, as here, the prosecution not only has a duty to disclose exculpatory evidence, but also has an affirmative duty to look for evidence consistent with innocence—something the record shows that the PCAOB failed to do.

The sanctions levied against Petitioners state that Petitioners violated PCAOB rules intentionally, knowingly, and recklessly.

Thus, in affirming the sanctions issued by the Hearing Officer, the PCAOB believes that the evidence produced at the hearing demonstrates that Petitioners rule violations were made with scienter, consistent with the federal securities statutes requiring sufficient proof scienter before the PCAOB's quasi-criminal penalties may be imposed. Scienter is a mental state "embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 fn. 12 (1976). A plaintiff may demonstrate scienter by alleging facts:

> "(i) Showing that the defendants had both motive and opportunity to commit fraud or;

> "(ii) Constituting strong circumstantial evidence of conscious misbehavior or recklessness."

*In re Longtop Financial Technologies Ltd. Securities Litigation*, 939 F.Supp.2d 360, 377 (S.D.N.Y. 2013).

Moreover, a generalized "motive" will not suffice and plaintiff must demonstrate a concrete and personal benefit to the defendant resulting from the fraud. *Id*. "Where motive is not apparent, it is

still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

The scienter element can be satisfied by a conscious and reckless disregard for the truth. *South Cherry Street, LLC v. Hennessee Group LLC, 573 F.3d 98, 109* (2d Cir. 2009) ["by 'reckless disregard' we mean 'conscious recklessness—i.e., a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'"]

In the context of securities fraud this exemplifies conduct that "at the least … is *highly unreasonable* and which represents *an extreme departure* from the standards of ordinary care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it.*" *Id.* [italics added].

Further, "to establish scienter through recklessness, it is not enough for plaintiff to establish that the method of preparation for the projections used simply was unreasonable." *CL-Alexanders Laing*

*& Cruickshank v. Goldfeld*, 739 F.Supp. 158, 163 (S.D.N.Y. 1990). Instead, the "plaintiff must establish that the defendant disseminated the forecasts knowing they were false or that the method of preparation was so egregious as to render their dissemination reckless." *Id.* In other words, recklessness connotes defendant's knowledge that he does not have a sufficient basis on which to speak. *Id.*

The recklessness standard applied to outsider auditors was recently considered by Southern District of New York Judge Shira A. Schendlin who found:

> An outside auditor will typically not have an apparent motive to commit fraud, and its duty to monitor an audited company for fraud is less demanding than the company's duty not to commit fraud. Thus, the failure of a non-fiduciary accounting firm to identify problems with a company's internal controls and accounting practices does not constitute recklessness. For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. In a common formulation, such recklessness must approximate an actual intent to aid in the fraud being perpetrated by the audited company." *In re*

*Longtop*, 939 F.Supp2d at 377 (quoting *Stephenson v. PriceWaterhouseCoopers, LLP*, 482Fed.Appx 618, 623 (2d Cir. 2012) and *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 387 Fed.Appx 636, 640 (2d Cir. 2012)).

For an accountant to have acted recklessly during an audit a plaintiff must prove that the accounting practices were *so* deficient that the audit amounted to "no audit at all." *In re Scottish Re Group Securities Litigation*, 524 F.Supp.2d 370, 385 (S.D.N.Y. 2007).

The PCAOB contends that Petitioners violated Auditing Standard No. 3, ¶ 15 in arguing that Petitioners did not assemble a complete and final set of audit documentation within 45 days of the release date. *See* AID, ER Vol. 50, Doc. No. 195 at p. 10526. The PCAOB also believed that Petitioners intentionally and knowingly backdated work papers to deceive the PCAOB. The PCAOB admits, as it must, that there is no direct evidence to support these findings. Instead, the PCAOB argues that there was sufficient circumstantial evidence to sanction Petitioners.

However, the circumstantial evidence that the PCAOB offers as probative of guilt is based on an impermissible pyramiding of

inference upon inference upon inference to reach a result. That is, the PCAOB's expert's opinion merely reports on his review of the metadata for documents that he was provided, infers that the meta data was changed to mislead investigators, and then infers that the change was done intentionally. The PCAOB's expert could not say whether these were the same documents that were provided to the investigators. Further, the PCAOB's expert's opinion does not support a finding that Petitioners intentionally, knowingly, and/or recklessly misled investigators because that would require that the PCAOB's expert make factual determinations regarding witness credibility. Instead, the PCAOB's expert draws his own conclusion of intent simply because he does not believe there is any other rational explanation why the metadata was changed.

Conversely, there was a logical adverse inference that Petitioners' files were corrupted and that Petitioners' provided replacement files to the PCAOB that their expert reviewed which explains the anomalies surrounding the metadata. Moreover, considering both arguments objectively, the evidence presented lacks a credible inference that there was an intentional act to deceive the

PCAOB, especially when the PCAOB does not take issue with the audit opinions that the Firm ultimately reached on these audits.

## 5.     THE PCAOB'S DISCIPLINARY PROCEEDINGS WERE UNCONSTITUTIONAL AND VIOLATED PETITIONERS PROCEDURAL DUE PROCESS RIGHTS

"Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Memphis, Light, Gas and Water Division v. Craft*, 436 U.S. 1, 19 (1978). So, before a property or liberty interest can be taken, the owner of the interest is entitled to notice and a hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Further, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481

(1972). "[W]hat procedures satisfy due process [in a given situation] depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 4 *Bell* 6 L.Ed 2d 18 (1976)." *Brewster v. Board of Educ. Of Lynwood Unified School Dist.*, 149 F.3d 971, 983 (9th Cir. 1998).

"In Mathews, the Supreme Court stated:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews, supra*, 424 U.S. at 335; *Brewster, supra*, 149 F.3d at 983.

Stated differently, a "[p]rocedural due process claim hinges on proof of two elements: (1) a protectable liberty or property interest…

and (2) a denial of adequate procedural protections. *Foss v. National Marine Fisheries Service*, 161 F.3d 584, 588 (9th Cir. 1998) [citing *Roth, supra*, 408 U.S. at 569-571 and *Mathews, supra*, 424 U.S. at 335].

The central issue addressed on this appeal concerns the PCAOB's summary affirmance of the sanctions levied against Petitioners which include severe monetary penalties, as well as barring Petitioners from associating with a registered public accounting firm. As will be demonstrated in further detail below, the actions taken by the hearing officer and the PCAOB have resulted in a denial of basic procedural protections that are guaranteed to Petitioners under the Fourteenth Amendment. The denial of these basic protections militates that the sanction imposed be vacated and that a new hearing be instituted with consideration of all procedural safeguards contemplated under the Constitution.

## a. PETITIONERS HAVE A PROPERTY INTEREST IN THEIR PROFESSION

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth, supra*, 408 U.S. 564, 569. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Id*. at 576. As the Supreme Court in *Roth* explained:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Id.* at 577

"Courts have long recognized that licenses which enable one to pursue a profession or earn a livelihood are protected property interests for purposes of a Fourteenth Amendment analysis." *Jones v. City of Modesto*, 408 F.Supp.2d 935, 950 (E.D. Cal. 2005).

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 402 U.S. 535, 539 (1971).

Further, if the license provides for renewal "[u]pon compliance with certain criteria, none of which involve the discretion of the reviewing body, the licensee has a property right in the reissuance of the license." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1165 (9th Cir. 2005).

Here, the particular licenses at stake involve the Firm's registration that was permanently revoked (AID, ER Vol. 50, Doc.

41

No. 195 at p. 10543) and Petitioners ability to associate with a registered public accounting firm. AID, ER Vol. 50, Doc. No. 195 at 10543-10544.

### b. THE STATUTE OF LIMITATIONS EXPIRED BEFORE THE PCAOB PROSECUTED ITS ACTION AGAINST PETITIONERS

The subject audits involved the 2007 fiscal year of the Kabani firm's clients, and the PCAOB reviewed these files by **June 2, 2008**. The limitations period for governmental action regarding enforcement of securities laws is four (4) years under 28 U.S. Code § 1658.

As per the administrative record the U.S. Securities & Exchange Commission filed regarding its sub-agency, the PCAOB, the PCAOB did not file its disciplinary action against Petitioners until more than 4 years later, namely, **June 15, 2012**.

Accordingly, the PCAOB lost the ability to prosecute its action against Petitioners, which alone would be separate and independent grounds to warrant reversal of the administrative judgment below.

In addition to being time-barred, the PCAOB did not provide a full or fair hearing to Petitioners. Notably, in response to public outcry regarding the kangaroo-court nature of PCAOB proceedings, the SEC voluntarily reformed its PCAOB hearings *after* Petitioners' hearing was conducted.

### c. PETITIONERS WERE DENIED ADEQUATE PROCEDURAL PROTECTIONS BY THE HEARING OFFICER AND THE PCAOB IN REVIEW

Having determined that Petitioners hold a property interest in their ability to associate with a registered public accounting firm, which is Petitioner's sole form of income presently, we next turn to the procedural due process balancing test set out in *Mathews*.

### i. THE PCAOB'S PUBLISHED SETTLEMENT FOR SAEED UNFAIRLY PREJUDICED PETITIONERS, SUBJECTED THEM TO BIAS, AND VIOLATED THEIR DUE PROCESS RIGHTS

Under 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard for judging the appearance of partiality is an objective one that involves ascertaining whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Preston v. U.S.*, 923 F.2d 731, 734 (9th Cir. 1991).

Under Rule 5110 of the PCAOB's Rules on Investigations and Adjudications, the Secretary of the Board is tasked with assigning a hearing officer to preside over disciplinary proceedings.

Under Rule 5204 of the PCAOB's Rules, hearings conducted by the Board are to be private unless good cause warrants that the proceedings be public and with consent of the parties.

Shortly before the hearing, the PCAOB reached a settlement with Saeed and published that settlement on the PCAOB's website. This settlement stated that Saeed violated PCAOB rules and auditing

standards for the Firm's audits of two issuers known as Hartcourt and NetSol. The Settlement identified Kabani & Company as the auditor of these issuers which effectively tainted the neutrality of the forum and that of the Hearing Officer appointed by the PCAOB. That is, the publication of Saeed's settlement with the PCAOB, before the hearing, ensured that Petitioners would not receive a fair and impartial hearing insofar as Petitioners were already adjudged by the PCAOB.

> **ii. PETITIONERS WERE PROHIBITED FROM DESIGNATING A SUBSTITUTE REBUTTAL EXPERT AFTER THEIR INITIAL EXPERT REFUSED TO TESTIFY FOR LACK OF PAYMENT**

The PCAOB acknowledges that there is no Board rule that specifically addresses the standard for deciding whether a hearing officer should grant a request to modify a pre-trial scheduling order. Thus, reliance on the Federal Rules of Civil Procedure and applicable federal case law is paramount to this analysis.

Rule 16(e) of the Federal Rules of Civil Procedure provides that a scheduling order may be modified for good cause with the judge's consent. "Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Landes v. Skil Power Tools*, 2013 WL 6859837, at *3 (E.D. Cal., December 30, 2013).

In the Ninth Circuit, "district courts should generally allow amendments of pretrial orders provided three criteria are met:

(1) no substantial injury will be occasioned to the opposing party, (2) refusal to allow the amendment might result in injustice to the

movant, and

(3) the inconvenience to the court is slight."

*Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).

"Where a scheduling order can have an outcome-determinative effect on the case … total inflexibility is undesirable." *Landes, supra*,

at *3. Moreover, "a scheduling order which results in the exclusion of evidence is …a drastic sanction." *Id.*

First, there was no prejudice to Respondent had Petitioners' been allowed to produce a substitute expert. Pet. For Review, ER Vol. 47, Doc. No. 951, at p. 9778. In fact, Petitioners sought to substitute their expert two months before the hearing and their substituted expert appeared at the hearing and could have testified had the Hearing Officer allowed. *Id.* at 9779. The basis for replacing Petitioners' expert was that their prior expert was out of state on another assignment and not available during the hearing. *Id.* After the hearing, Petitioners' original expert sought a large payment for his expert opinion which Petitioners could not pay, and the inability to pay was caused, in part, by the PCAOB publishing Saeed's settlement which cast Petitioners in a negative light thereby tarnishing their reputation in the community. *Id.* The firm's total number of audit clients has since declined from over 50 at the time of publishing the settlement to about 5 currently. Thus, the PCAOB tactics effectively punished Petitioners *before* the hearing and caused Petitioners to go into

47

financial distress which effected their ability to defend themselves before the Board.

Because Petitioners were precluded from introducing their rebuttal expert, Respondent's expert was allowed to provide uncontroverted expert testimony of which the Hearing Officer gave great deference. This resulted in a miscarriage of justice as Respondent's expert's opinions were unchallenged and accepted as true regardless of whether or not those opinions were in fact true and accurate.

Finally, the inconvenience to the Hearing Officer was slight given that Petitioners substituted expert was allowed to appear at the hearing, was able to review the testimony provided by Respondent's expert, and allowed to advise Petitioners regarding the veracity of Respondent's expert testimony. The Hearing Officer could have received some testimony from Petitioners expert with restrictions on time to avoid delays. At a minimum, the Hearing Officer, who had limited knowledge and experience in the fields of auditing and accounting, and who was acting as judge and jury, would have been

exposed to different opinions that may have brought to light certain ambiguities and falsehoods that went unchallenged.

### iii. THE PCAOB IMPROPERLY FAILED TO PRESENT OR INVESTIGATE AVAILABLE EXCULPATORY EVIDENCE

The government has an affirmative duty to disclose evidence favorable to a defendant. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

The PCAOB was provided with all of the Firm's audit files, as well as replacement files once it was learned that the original files were corrupted. Nevertheless, the PCAOB did not advise the Hearing Officer of the fact that the metadata for the original audit files showed that the files were not created or modified after the fact which is direct evidence that no wrong doing occurred.

Instead, the PCAOB cherry-picked the metadata from *replacement* files (since the original files were converted to un-editable to jpeg files that over the years the PCAOB spent investigating had become corrupted through no fault of Petitioners)

49

knowing that these documents were reformatted and would show recent modification dates.

The PCAOB's suppression of this evidence violates Petitioners' due process since the evidence is material of guilt or innocence. Nor did the PCAOB's expert or other investigators make any attempt to verify other contemporaneous electronic documents generated contemporaneously with the work papers, such as inter-office emails or emails to clients and third parties bearing copies of work papers. That is, the PCAOB's expert and investigation was done to reach a specific result and so blindly ignored other evidence showing innocence or at least a lack of intent to deceive, in violation of Petitioners' constitutionally protected rights.

## iv. THE HEARING OFFICER AND PCAOB IMPROPERLY SHIFTED THE BURDEN OF PROOF OF PETITIONERS CAUSING LEGAL ERROR.

Under PCAOB Rule 5204(a), "[i]n any disciplinary proceeding instituted pursuant to Rule 5200(a)(1), the interested division shall

bear the burden of proving an alleged violation or failure to supervise by a preponderance of the evidence. A respondent raising an affirmative defense shall bear the burden of proving that affirmative defense by a preponderance of the evidence."

Typically, errors in assigning burden of proof require reversal. *In re Niles*, 106 F.3d 1456, 1460 (9th Cir. 1997) [citing *Larez v. Holcomb* 16 F.3d 1513, 1518 (9th Cir. 1994)]. Further, a district court's error in assigning the burden of proof is not held harmless when the district court's judgment is based almost exclusively on gaps in testimony. (*Id.* [citing *Matter of Battaglia*, 653 F.2d 419, 423-424 (9th Cir. 1981)].

Here, the June 15, 2012 OIP was specifically brought under Rule 5200(a)(1). *See* OIP, ER Vol. 1, Doc. No. 1, at p.1. Thus, it was the PCOAB's burden to establish a violation occurred.

Petitioners argued in their petition for review and motion for reconsideration that the Hearing Officer misapplied the burden of proof and that the PCAOB erroneously affirmed the Hearing Officers legal error without addressing the issue of whether the Hearing

Officer applied the appropriate burden of proof. *See* Pet. For Review, ER Vol. 47, Doc. No. 951, at p. 9758; see also Motion for Reconsideration, ER Vol. 49, Doc. No. 962, at pp 10224-10232. It was only until Petitioners brought this issue to the PCAOB's attention a second time in the motion for reconsideration that the PCAOB attempted to respond to this issue.

In response, the PCAOB argues, in general terms, that the basis for the Hearing Officer's conclusion—that a preponderance of the evidence supported liability—was contained in the AID. *See* Order Denying Motions for Reconsideration, ER Vol 1, Doc. No. 964, at pp. 201-207.   But importantly, the PCAOB acknowledged the utter lack of direct evidence demonstrating a violation and instead argued that sufficient circumstantial evidence was produced and was a sufficient basis for liability. *Id*. at 203. The PCAOB refused to go into any detail regarding what circumstantial evidence was dispositive and similarly refused to address the critical statements in the AID that clearly show legal error on the part of the Hearing Officer. Indeed, the PCAOB fails to address the Hearing Officer's AID which held that:

"Central to the Kabani Respondents' defense is their claim that Saeed reviewed non-final audit work papers in connection with an internal quality control inspection. **They [the Kabani Respondents] never proved, however, either that he was reviewing the documents solely for quality control purposes or that he was reviewing non-final versions of the audit work papers**." (Motion For Reconsideration, ER Vol. 49, Doc. No. 962, at p. 10226; *see also* AID, ER Vol. 50, Doc. No. 195 at 10508.)

The Hearing Officer's decision clearly and unequivocally states that it was Petitioners' burden to prove the Saeed review did not include the final work papers. This legal finding is in direct contravention with the applicable burden of proof and demonstrates that the Hearing Officer's conclusions were fundamentally and legally flawed from the beginning such that Petitioners could never have received a fair shake at trial. Thus, the only way to correct this error is to vacate the decision below and order that a new hearing be administered with safeguards to ensure that Petitioners' due process rights are protected.

### v.   THE INVESTIGATION AND DISCIPLINARY PROCEEDINGS WENT ON FOR SEVERAL YEARS ALLOWING MEMORIES TO FADE, EVIDENCE TO BE LOST OR MANIPULATED, AND WITNESSES BECAME DIFFICULT TO LOCATE

A speedy trial is a fundamental right for the accused, guaranteed by the Sixth Amendment. *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967). In determining whether this right has been violated, courts must consider and weigh the following factors: (1) whether the delay was uncommonly long; (2) whether the government or defendant was more to blame for the delay; (3) the assertion of the right; and (4) prejudice to the defendant. *Doggett v. U.S.*, 505 U.S. 647, 651 (1992). The U.S. Supreme Court has held that the U.S. Constitution's limitations regarding criminal prosecutions also apply to quasi-criminal proceedings too. See *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170

(1965) [applying 4th Amendment's Exclusionary Rule to forfeiture proceeding because such proceeding is quasi criminal in nature].

Moreover, the imposition of a fine as a penalty for violation of the law can be considered "quasi-criminal" in nature. *U.S. v. Sanchez*, 520 F.Supp. 1038, 1040 (S.D. Fla. 1981); see also *S.E.C. v. Shanahan*, 504 F. Supp.2d 680, 683 (E.D. Mo. 2007) [discussing that courts have held the Fifth Amendment privilege may apply in quasi-criminal proceedings where potential sanctions include fines, penalties, or forfeitures].

In 2008, the PCAOB investigated certain audit clients of the Firm and made requests to Petitioners to produce documents in relation to this investigation. It was not until June of 2012, that the PCAOB decided to commence disciplinary proceedings against Petitioners through its Division of Enforcement and Investigations. The hearing on these charges did not commence until a year later and then Hearing Officer did not even issue his decision until 10 months after the hearing in violation of PCAOB rules. Overwhelmingly, the delays in prosecution and judgment were caused by the government.

From the initial PCAOB investigation until the decision, approximately six years had passed. During that time, employees of the firm left for other opportunities and Petitioners had difficulty locating these persons who could have provided important testimony supporting Petitioners defenses at the hearing. Because of the PCAOB's delay in prosecuting its claims, Petitioners have been unduly prejudiced and disadvantaged in presenting their defense. Moreover, Petitioners could not even assert their rights and seek an expedited resolution as the government refused to institute disciplinary proceedings for nearly four years after it began its investigation.

## vi. THE ORIGINALLY APPOINTED HEARING OFFICER WAS SUBSEQUENTLY REPLACED WITH SOMEONE WITH NO AUDITING OR ACCOUNTING EXPERIENCE

On or about May 7, 2013, a new Hearing Officer was appointed which was roughly one month before the hearing. *See* Notice of Appointment of Replacement Hearing Officer, Doc. No. 129. This

newly assigned Hearing Officer had no experience in the practice of auditing  and accounting and relied entirely upon the PCAOB's legal conclusions and the analysis of its expert. Moreover, the new Hearing Officer was unfamiliar with the case, the previous pleadings and motion documents, and discovery issues before the hearing.

### vii.   PETITIONERS WERE DEPRIVED OF A JURY TRIAL

The Seventh Amendment to the United States Constitution provides that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved..."

To determine whether a particular action is a suit at common law for which a jury trial exists, one must examine both the nature of the issues involved and the remedy sought. *Wooddell v. International Broth. Of Elec. Workers, Local 71*, 502 U.S. 93, 97 (1991). First, one must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id*. Secondly, one must "examine the remedy sought and

determine whether it is legal or equitable in nature." *Id.* "Generally, an award of money damages was the traditional form of relief offered in the court of law." *Id*.

Here, Petitioners were subjected to the equivalent of a bench trial with a Hearing Officer holding sole discretion to consider and issue money damages against Petitioners under a discretionary statutory scheme. Further, the Hearing Officer was allowed to issue the equivalent of future damages and punitive damages in terminating Petitioners' registration and barring them from practice before the PCAOB. This decision has far reaching penalties as it prohibits Petitioners from pursuing their chosen occupation and effects their livelihood and ability to seek employment. Accordingly, this action qualifies as an action at law to which Petitioners are entitled a jury trial.

**6.  THE PCAOB MISREPRESENTED THE CREATION/MODIFICATION DATES OF PETITIONERS' WORK PAPERS AFTER PETITIONERS PROVIDED THE PCAOB WITH *REFORMATTED* REPLACEMENT FILES**

**BECAUSE THE PCAOB HAD TROUBLE ACCESSING THE ORIGINAL FILES**

The PCAOB analyzed metadata of several issuers, including PacificNet which comprised nearly 80% of the PCAOB's metadata evidence against Petitioners. However, the PCAOB's metadata evidence is based upon replacement files that were provided to the PCAOB as a courtesy after the PCAOB advised Petitioners that it was having difficulty accessing the Firm's JPEG files.

Petitioners produced evidence that the software used to store the Firm's work papers became corrupted and so the Firm and its staff interfaced with the Firm's IT and changed the file properties so that the PCAOB could access the requested files. The PCAOB then turned around and offered these files as evidence of backdating/modifying work papers because the creation/modification dates in the metadata listed dates that did not comport with the correct audit dates.

Nevertheless, the PCAOB's inference of backdating/modifying work papers is a fallacy given that a simple analysis of the file shows there are duplicate work papers in JPEG format with the correct

dates in the metadata. In other words, when Petitioners copied the JPEG files into Adobe format, the Adobe metadata listed a recent modification date, but the metadata for the JPEG file, which was still part of the file, had the original metadata dates which is direct evidence that the correct and complete work papers were already in the file and were not changed in anticipation of a PCAOB investigation.

## 7.    THE HEARING OFFICER ISSUE AND THE BOARD AFFIRMED DRACONIAN SANCTIONS AND PENALTIES GIVEN PETITIONERS CLEAN HISTORY AND FAILED TO CONSIDER IMPOSING ADDITIONAL TRAINING AND EDUCATION AS AN ALTERNATIVE PENALTY TO PROMOTE COMPLIANCE WITH THESE RULES

PCAOB Rule 5300 and Section 105(c)(4)-(5) of the Sarbanes Oxley Act (the "Act") govern the sanctions that were considered and levied against Petitioners by the Hearing Officer. *See* AID, ER Vol.50, Doc. No. 195 at p. 10529.

Under the Act, "If the Board finds, based on all of the facts and circumstances, that a registered public accounting firm or associated person thereof has engaged in any act or practice, or omitted to act, in violation of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of Commission issued under this Act, or professional standards, the Board may impose such disciplinary or remedial sanctions as it determines appropriate, subject to applicable limitations under paragraph (5), including--

**(A)** temporary suspension or permanent revocation of registration under this subchapter;

**(B)** temporary or permanent suspension or bar of a person from further association with any registered public accounting firm;

**(C)** temporary or permanent limitation on the activities, functions, or operations of such firm or person (other than in

connection with required additional professional education or training);

(D) a civil money penalty for each such violation, in an amount equal to—

      (i)      not more than $100,000 for a natural person or $2,000,000 for any other person; and

      (ii)      in any case to which paragraph (5) applies, not more than $750,000 for a natural person or $15,000,000 for any other person;

(E) censure;

(F) **required additional professional education or training;**

or

(G) **any other appropriate sanction provided for in the rules of the Board**."

15 U.S.C.A. § 7215(c)(4) (bold added).

The sanctions and penalties imposed by the Board shall only apply to "intentional or knowing conduct, including reckless conduct, that results in violation of the applicable statutory, regulator, or professional standard" or "repeated instances of negligent conduct." 15 U.S.C.A. § 7215(c)(5)(A)-(B).

Additionally, PCAOB rule 5300 provides additional remedial sanctions not mentioned in the Act that include the following:

"…

(7) require a registered public accounting firm to engage an independent monitor, subject to the approval of the Board, to observe and report on the firm's compliance with the Act, the Rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, or professional standards.

(8)    require a registered public accounting firm to engage counsel or another consultant to design policies to effectuate compliance with the Act, the Rules of the Board, the provisions

of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, or professional standards;

(9)     require a registered public accounting firm, or a person associated with such a firm, to adopt or implement policies, or to undertake other actions, to improve audit quality or to effectuate compliance with the Act, the Rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, or professional standards; and

(10)     require a registered public accounting firm to obtain an independent review and report on one or more engagements.

As an initial matter, the record below lacks direct evidence that Petitioners violated PCAOB rules and securities laws intentionally, knowingly, and/or recklessly. Instead, the PCAOB contends that there was sufficient circumstantial evidence gathered from contemporaneous emails, forensic data, and testimony to reach its findings. However, as

demonstrated herein and in previous motions raised before the Board, the Hearing Officer on numerous occasions misinterpreted the context of the emails, gave significant weight to the testimony of an admitted liar, and received and considered dubious expert testimony over Petitioners objection in which the PCAOB expert remarkably states that he could infer "intentional" backdating from metadata. The leaps and bounds that were made in order to get a desired result are incredible.

Importantly, the PCAOB order fails to consider that none of the Petitioners have a prior history of discipline with the PCAOB. That is, until now, each of the Petitioners have conducted themselves in accordance with PCAOB rules and procedures, ethically and professional, both *before and after* the disciplinary proceedings were instituted.

The above PCAOB rules which outline various penalties for violations include orders for additional education and training and other remedial measures designed to ensure future compliance with PCAOB rules. Sadly, none of these remedial measures were considered, let alone mentioned in the Hearing Officer's decision or

the PCAOB's affirming orders. Instead, the PCAOB simply labeled Petitioners at risk for recidivism and barred them from further practice.

The Hearing Officer did not address or consider that the original file of PacificNet, which was the main file in the case, was corrupted and could not be opened by the DEI which is why a replacement file was provided by Petitioners. The Hearing Officer did not consider that the DEI did not produce any evidence that the replacement file was the file that was reviewed by the inspectors which was its burden. Moreover, even the developer of the file, Thomson Reuters, indicated that they believe the two files, one which could be opened by the PCAOB staff and the one that could not be opened, were different files. The two files were different sizes and different names, yet the non-final file was what was used against Petitioners on the assumption that the final file would have been the same.

Given there are legitimate doubts as to the intent of Petitioners to manipulate and backdate work papers, coupled with the PCAOB's goal of improving auditor efficiency, and Petitioners prior lack of discipline and professional experience, it only makes sense for the

Commission to consider that Petitioners could benefit from less severe sanctions designed to educate and improve their professional conduct.

That the PCAOB did not consider this an option before is puzzling, and a mistake that the Commission is able to and should correct.

## 8. **CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Commission vacate the PCAOB's sanctions against them in their entirety for want of sufficient evidence and because of the due process violations Petitioners suffered through the unduly long investigatory and prosecution process, resulting in the denial of a full or fair trial.

Alternatively, a new hearing should be ordered with a new period of discovery for the PCAOB to show that there is objective evidence consistent with its computer expert's unsupported suspicion that Petitioners' work papers were not the product of contemporaneous work, such as reviewing the innumerable emails and other electronic

data that corroborates with the physical work papers, to determine whether a new hearing is warranted at all.

Finally, and at a minimum, the PCAOB's penalties must be reasonably reduced consistent with the remedial procedures outlined in the PCAOB rules. That is, the monetary sanctions should be substantially reduced with a payment plan, and some type of monitored probation that than actual lifetime or other bars for a period of years, which would have the effect of needless ending now several auditors' heretofore unblemished careers in the public auditing arena.

Dated:     August 21, 2017                    Respectfully submitted,


                                        **s/ John  Armstrong**
                                        John Armstrong
                                        **HORWITZ + ARMSTRONG**
                                        14 Orchard Road, Suite 200
                                        Lake Forest, CA 92630
                                        TELEPHONE:  (949) 540-6540
                                        FACSIMILE:   (949) 540-6583
                                        *Attorney for Petitioners*

## CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1.     This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,800 words as counted using Microsoft Word 2010.

2.     This document complies with the typeface required of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-Point Times New Roman.

Dated: August 21, 2017              ___/s/John R. Armstrong_____

                                                            John R. Armstrong

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 21, 2017. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ John R. Armstrong
John R. Armstrong