**No. 17-70786**

UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

---

KABANI & COMPANY, INC., HAMID KABANI, CPA, MICHAEL
DEUTCHMAN, CPA, and KARIM KHAN MUHAMMAD, CPA,

Petitioners,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

Respondent.

---

On Petition for Review of an Order of the Securities and Exchange Commission

---

**BRIEF OF SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT**

---

ROBERT B. STEBBINS
General Counsel

MICHAEL A. CONLEY
Solicitor

STEPHEN G. YODER
Senior Litigation Counsel

EMILY T.P. ROSEN
Senior Counsel

Securities and Exchange Commission
100 F St., N.E.
Washington, D.C. 20549
(202) 551-5169 (Rosen)
rosene@sec.gov

# TABLE OF CONTENTS

 Page

TABLE OF AUTHORITIES .........................................................................iv

STATEMENT OF JURISDICTION…………………………………….. ...................1

COUNTERSTATEMENT OF THE ISSUES………………………………….. 2

STATUTORY AND REGULATORY ADDENDUM…………………………..2

COUNTERSTATEMENT OF THE CASE…………………………………….. 2

A.   Nature of the case…………………………………………………....2

B.   Statutory and regulatory regime ....................................................3

C.   Statement of facts ...................... ……………………………..…5

    1.   After learning that the PCAOB was planning to inspect K&C's audit files, petitioners engaged in a "cleanup" of the files after the documentation completion date. ........................................................7

    2.   After learning the date of the upcoming PCAOB inspection and the audits to be inspected, petitioners' "cleanup" intensified and focused on the files the PCAOB had identified for inspection. . .......................8

    3.   Petitioners did not inform the PCAOB inspectors that the work papers in the inspected audit files had been supplemented or altered after their respective documentation completion dates. ...............................9

    4.   The PCAOB Division of Enforcement opened an investigation of K&C after learning of the "cleanup" from Saeed. .............................9

D.   Proceedings before the PCAOB ...................................................11

E.   Proceedings before the Commission ...........................................16

F.   Proceedings in this Court..............................................................19

# TABLE OF CONTENTS (continued)

STANDARD OF REVIEW ........................................................................................19

SUMMARY OF ARGUMENT………………………………………………...22

ARGUMENT…………………………………………………………………….. 24

I.      Substantial evidence supports the Commission's finding that petitioners altered and added work papers for three audit files after the documentation completion dates and produced the files to the PCAOB without informing it of the late changes. . ...…………………………………………………….24

II.     The Commission acted within its discretion in sustaining the sanctions imposed on petitioners. ................................................................................27

    A.      Substantial evidence supports the Commission's findings that petitioners' violations were intentional, knowing, or reckless.  .........28

    B.      The Commission acted well within its discretion in concluding that the sanctions imposed on petitioners were not excessive, oppressive, or otherwise inappropriate. .................................................................31

III.    The Commission correctly concluded that petitioners received a fair hearing. . ........................................................................................35

    A.      Petitioners received a fair hearing before the PCAOB and hearing officer and all process they were due. ................................................35

        1.      The Commission correctly found that the PCAOB hearing officer acted within its discretion in denying petitioners' request to designate a substitute expert witness and that, in any event, any error was harmless. ..........................................................35

        2.      The Commission correctly found that the PCAOB hearing officer did not lack sufficient experience and that, in any event, any error was harmless. ..........................................................38

## TABLE OF CONTENTS (continued)

3. The Commission correctly found that the PCAOB hearing officer did not apply an incorrect burden of proof. .................39

4. The Commission correctly concluded that the PCAOB did not violate petitioners' rights by publishing the settlement with Saeed and that, in any event, any error was harmless. ...........42

5. Petitioners' statute-of-limitations argument is forfeited and frivolous. ................................................................................42

B. Petitioners' claims of other constitutional violations are forfeited and, in any event, without merit. ................................................................44

1. There was no *Brady* violation of petitioners' rights. ...............44

2. There was no violation of petitioners' Sixth Amendment right to a speedy trial or Seventh Amendment right to a jury trial. ........................................................................................46

CONCLUSION ........................................................................................47

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

STATUTORY AND REGULATORY ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**          **PAGE**

*Atlanta-One, Inc. v. SEC*, 100 F.3d 105 (9th Cir. 1996) .................................. 41

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................ 18, 44

*Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182 (1973).................. 20

*Exxon Mobil Corp. v. EPA*, 217 F.3d 1246 (9th Cir. 2000) ............................ 42-43

*Fed. Power Comm'n v. Transcom. Gas Pipe Line Corp.*, 423 U.S. 326

     (1976) ........................................................................................... 19

*Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) .............................................. 20

*Hannah v. Larche*, 363 U.S. 420 (1960)........................................................... 46

*Hudson v. United States*, 522 U.S. 93 (1997) ................................................... 46

*Krull v. SEC*, 248 F.3d 907 (9th Cir. 2001) ...................................................... 19-20

*Lands Council v. McNair*, 629 F.3d 1070 (9th Cir. 2010)................................ 43

*Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875 (7th Cir. 1985) ...... 20-21

*R.H. Johnson & Co. v. SEC*, 198 F.2d 690 (2d Cir. 1952) ............................... 21

*Rhoades v. Henry*, 598 F.3d 495 (9th Cir. 2010).............................................. 45

*Rooms v. SEC*, 444 F.3d 1208 (10th Cir. 2006) ............................................... 34

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) ........................................... 28

*Siegel v. SEC*, 592 F.3d 147 (D.C. Cir. 2010) ................................................. 34

*In re Slatkin*, 525 F.3d 805 (9th Cir. 2008) ...................................................... 31

*Steadman v. SEC*, 450 U.S. 91 (1981) .............................................................. 19

*Tull v. United States*, 481 U.S. 412 (1987)....................................................... 46

*United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992).................................. 31

iv

# TABLE OF AUTHORITIES (continued)

**CASES (cont.)**                                                          **PAGE**

*United States v. Zambrana*, 841 F.2d 1320 (7th Cir. 1988) ............................. 45

*Woodford v. Ngo*, 548 U.S. 81 (2006) ................................................................. 43

## STATUTES AND RULES

5 U.S.C. § 706(2)(A) ..................................................................................... 5, 20

28 U.S.C. § 1658 ........................................................................................ 42, 43

28 U.S.C. § 1658(a) ........................................................................................... 42

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*
Section 25(a), 15 U.S.C. § 78y(a) ...................................................................... 20
Section 25(a)(1), 15 U.S.C. § 78y(a)(1) .............................................................. 2
Section 25(a)(4), 15 U.S.C. § 78y(a)(4) ......................................................... 5, 19

Sarbanes-Oxley Act of 2002
15 U.S.C. § 7211(a) ............................................................................................. 3
15 U.S.C. § 7211(c) ............................................................................................. 4
15 U.S.C. § 7212 ............................................................................................. 3-4
15 U.S.C. § 7212(b)(3)(A) .................................................................................. 5
15 U.S.C. § 7213(a)(1) ...................................................................................... 3-4
15 U.S.C. § 7215(b)(1) ........................................................................................ 4
15 U.S.C. § 7215(c) ............................................................................................. 4
15 U.S.C. § 7215(c)(5) ....................................................................................... 28
15 U.S.C. § 7215(e) ......................................................................................... 1, 4
15 U.S.C. § 7217(a) ............................................................................................. 4
15 U.S.C. § 7217(c)(2) ................................................................................ 1, 4, 16
15 U.S.C. § 7217(c)(3) .................................................................................... 4, 17

Public Company Accounting Oversight Board Rules and Standards
PCAOB Rule 3100 ............................................................................................... 4
PCAOB Rule 4006 ............................................................................................... 4
PCAOB Auditing Standard No. 3 .................................................................... 6, 32

**TABLE OF AUTHORITIES (continued)**

**PAGE**

## OTHER AUTHORITIES

*Gately & Assocs., LLC*, Exchange Act Release No. 62656, 2010 WL
    3071900 (Aug. 5, 2010).......................................................................... 28

*optionsXpress, Inc.,* Exchange Act Release No. 70698, 2013 WL 5635987
    (Oct. 16, 2013) ...................................................................................... 44

No. 17-70786

UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

---

KABANI & COMPANY, INC., HAMID KABANI, CPA, MICHAEL
DEUTCHMAN, CPA, and KARIM KHAN MUHAMMAD, CPA,

Petitioners,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

Respondent.

---

On Petition for Review of an Order of the Securities and Exchange Commission

---

BRIEF OF SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

---

## STATEMENT OF JURISDICTION

The Securities and Exchange Commission ("Commission") had jurisdiction

under 15 U.S.C. §§ 7217(c)(2), 7215(e), to review the disciplinary action taken by

the Public Company Accounting and Oversight Board ("PCAOB" or "Board")

against petitioners Kabani & Company, Inc. ("K&C"), Hamid Kabani, Michael

Deutchman, and Karim Khan Muhammad ("Khan"). The Commission entered an

order sustaining the disciplinary action on March 10, 2017. On March 17, 2017,

petitioners filed a timely petition for review with this Court. This Court has

1

jurisdiction under Section 25(a)(1) of the Securities Exchange Act of 1934
("Exchange Act"), 15 U.S.C. § 78y(a)(1), to review the final order of the
Commission.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether substantial evidence supports the Commission's finding that
petitioners altered and added work papers for three audit files after the
documentation completion dates and produced the files to the PCAOB without
notifying it of the late changes.

2.      Whether the Commission acted within its discretion in finding that the
PCAOB's sanctions imposed on petitioners for this conduct were not excessive,
oppressive, or otherwise inappropriate.

3.      Whether the Commission correctly concluded that petitioners received
a fair hearing before the PCAOB.

## STATUTORY AND REGULATORY ADDENDUM

In accordance with Circuit Rule 28-2.7, pertinent statutes and regulations are
set forth in an addendum bound to this brief.

## COUNTERSTATEMENT OF THE CASE

### A.    Nature of the case

The Commission found that petitioners K&C, Kabani, Deutchman, and
Khan violated the rules of the PCAOB by "engaging in a wide-spread and

resource-intensive effort to conceal documentation deficiencies in three issuer audit files from PCAOB inspectors." ER210[1] (Commission Opinion ("Op.") at 2) (internal quotation marks omitted). In light of petitioners' "egregious attempt to deceive the PCAOB," the Commission sustained the PCAOB's disciplinary action against petitioners, including the PCAOB's sanctions imposing civil penalties, censuring petitioners, revoking K&C's registration, and barring the individual petitioners from association with a registered public accounting firm (with a right to reapply after a specified time period for Deutchman and Khan). ER210, 223 (Op. 2, 15).

### B. Statutory and regulatory regime

Congress established the PCAOB with the passage of the Sarbanes-Oxley Act of 2002 ("the Act"), Pub. L. No. 107-204, 116 Stat. 745, and charged it with "oversee[ing] the audit of [public] companies that are subject to the securities laws, and related matters, in order to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports." 15 U.S.C. § 7211(a). Accounting firms that prepare or issue audit reports for publicly traded companies must register with the PCAOB and must comply with auditing quality control and ethics standards issued by the PCAOB. *Id.*

---

[1] "ER" refers to petitioners' Excerpts of Record. "SER" refers to the Commission's Supplemental Excerpts of Record. "Br." refers to petitioners' corrected brief.

§ 7212; *id*. § 7213(a)(1). The Act authorizes the PCAOB to conduct investigations and initiate disciplinary proceedings as to registered firms and their associated persons subject to the "oversight and enforcement authority" of the Commission. *Id*. § 7217(a); *id*. § 7215(b)(1), (c); *see also id*. § 7211(c). K&C was registered with the PCAOB, and Kabani, Deutchman, and Khan were persons associated with K&C. ER210 (Op. 2).

When the PCAOB initiates disciplinary proceedings and, upon a finding of violation, imposes a sanction, that finding and sanction are subject to review by the Commission. 15 U.S.C. § 7217(c)(2); *see also id*. § 7215(e). The Commission must determine that the record supports the Board's finding of violation and may "enhance, modify, cancel, reduce, or require the remission of a sanction imposed by the Board" if it concludes that the proposed sanction "is not necessary or appropriate" under the Sarbanes-Oxley Act or the securities laws or is "excessive, oppressive, inadequate, or otherwise not appropriate to the finding or the basis on which the sanction was imposed." *Id*. § 7217(c)(3), (c)(2).

PCAOB Rule 3100 requires registered public accounting firms and their associated persons to comply with "all applicable auditing and related professional practice standards." ER221 (Op. 13). PCAOB Rule 4006 requires registered public accounting firms and their associated persons to "cooperate with . . . any Board inspection," *id.*, which reflects the Act's requirement that every registered

4

public accounting firm and its associated persons must consent "to cooperat[e] in and compl[y] with any request for . . . the production of documents made by the Board in the furtherance of its authority and responsibilities." 15 U.S.C. § 7212(b)(3)(A). The Board has explained that the inspection process "is pivotal to the Board's ability to enhance investor protection and the accuracy of issuer auditor reports through its oversight of registered accounting firms." ER198 (PCAOB Opinion at 18) (internal quotation marks omitted).

On review in this Court, the Commission's factual findings, "if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4). The Commission's other conclusions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## C.  Statement of facts

At issue in this appeal are the 2007 audits of three issuers (Issuers A, B, and C) that K&C performed. ER210 (Op. 2).[2] Kabani is K&C's founder, president, and sole shareholder, and he was the engagement partner on all three audits. *Id.* Deutchman was K&C's director of audit and accounting, and he was the

---

[2] Because petitioners generally do not dispute the Commission's characterization of the facts (*see infra* Standard of Review and Argument I), this section follows the recitation in the Commission's opinion. A more detailed recitation with citations to the evidence in the administrative record may be found in the amended initial decision of the PCAOB's hearing officer. ER85-177 (Amended Initial Decision, PCAOB No. 105-2012-002 (Apr. 22, 2014)).

concurring partner on the three audits. *Id.* Khan was a K&C auditor with responsibilities for overseeing general audit work and supervising audit staff, and he acted as an audit supervisor or manager on the Issuer A audit. *Id.*

The PCAOB's auditing standards require that complete and final documentation for an audit be assembled for retention within 45 days of the release date of the auditor's report ("the documentation completion date"). PCAOB Auditing Standard No. 3 ("AS No. 3") ¶ 15; *see also* ER210-11 (Op. 2-3). Any documentation added after the documentation completion date must indicate the date the information was added, the name of the person who prepared the additional documentation, and the reason for adding the documentation. AS No. 3 ¶ 16; *see also* ER211 (Op. 3). Under AS No. 3, the respective documentation completion dates for Issuers A, B, and C were July 27, May 12, and May 30, 2008. ER211 (Op. 3).[3]

---

[3] Petitioners contend in a footnote that the documentation completion date for Issuer A was instead August 17, 2008, based on Issuer A's filing of its amended annual report on July 3, 2008. Br. 26 n.5. But the Commission properly rejected that contention because the documentation completion date is measured from the audit report release date, not from the issuer's filing date. ER211 (Op. 3. n.4) (citing AS No. 3, App'x A).

**1.    After learning that the PCAOB was planning to inspect K&C's audit files, petitioners engaged in a "cleanup" of the files after the documentation completion date.**

The PCAOB's Division of Registration and Inspections ("Inspections Division") informed K&C on June 2, 2008, that it would be inspecting K&C's audit records.  ER211 (Op. 3).  In response, petitioners engaged in a "cleanup" of K&C's audit files.  *Id.*  After receiving notice of the upcoming inspection, Kabani held an initial meeting with K&C personnel, notifying them of the upcoming inspection and directing K&C staff to review audit files in advance of the inspection to see if certain documents were missing.  *Id.*  After the meeting, Rehan Saeed, a concurring reviewer at K&C, was given a list of audit files by Kabani to review and told to "'report back what documents are missing.'"  *Id.*  Kabani, Deutchman, and Khan were kept apprised of Saeed's progress in reviewing the firm's audit files by a junior staffer who would email them an "updated list" of "Rehan[ Saeed's] PCAOB Cleaning-up as of today."  ER212 (Op. 4).

There were at least eleven references to the project in contemporaneous emails as "PCAOB Cleanup" or "PCAOB Cleaning-up."  ER211 (Op. 3).  As part of the "cleanup," K&C staff spent hundreds of hours on the Issuer A, B, and C audits *after* the documentation completion dates but *before* the PCAOB came to perform the inspection.  *Id.*  The cleanup was "'a huge project where everyone was

7

working on it, they were working overtime, they were working against the

deadlines.'" *Id.*

> **2.** **After learning the date of the upcoming PCAOB inspection and the audits to be inspected, petitioners' "cleanup" intensified and focused on the files the PCAOB had identified for inspection.**

The Inspections Division contacted K&C on Sunday, October 12, 2008 to

confirm that its staff would be arriving at K&C's office on Monday, October 20 for

the inspection. ER212 (Op. 4). The PCAOB emailed Kabani a list of the audits

that it would be inspecting, which included Issuers A, B, and C. *Id.* Kabani

forwarded the email within minutes to K&C staff stating: "'Please note below the

clients selected by the PCAOB. We will be working 12 hrs per day, next week,

including Saturday and possibly Sunday. Everybody is expected to make

arrangement[s] and resolve the[ir] personal matters. No exceptions.'" *Id.* Kabani

emailed Saeed directly, telling him, "'[s]ince we have been informed by the

PCAOB about which clients they will inspect, let's review those clients now.'" *Id.*

Deutchman also emailed Saeed stating that he looked forward to Saeed's

comments on the review and that "'as you [Saeed] know we really need them

now.'" *Id.* That week, Saeed completed his review of the Issuer B and C audit

files and emailed his comments to Kabani, Deutchman, and Khan. *Id.* Saeed

labeled his comments "Internal Inspection PCAOB Cleanup," and noted that

among numerous other deficiencies, the audit files for both Issuers B and C had not

been assembled within 45 days of the release of the audit report as required by AS

No. 3. *Id.*

> **3.** **Petitioners did not inform the PCAOB inspectors that the work papers in the inspected audit files had been supplemented or altered after their respective documentation completion dates.**

When the inspectors from the Inspections Division arrived on October 20,

2008, they reviewed, among other things, the audit files for Issuers A, B, and C.

ER212 (Op. 4). At Kabani's direction, the PCAOB inspectors were provided with

the work papers for the Issuer A, B, and C audits, but neither the work papers

themselves nor anyone at K&C disclosed to the inspectors that the work papers had

been supplemented or altered after the documentation completion dates. *Id.*

> **4.** **The PCAOB Division of Enforcement opened an investigation of K&C after learning of the "cleanup" from Saeed.**

Approximately a year after the inspection, Saeed left K&C and contacted

PCAOB staff regarding "'concerns that [he] developed over time relating to seeing

deficiencies and relating to work paper reviews in advance of a PCAOB

inspection.'" ER212 (Op. 4). Saeed provided the PCAOB with a thumb drive

containing copies of the audit files that he reviewed for Issuers A and B as well as

emails relating to all three audits at issue. *Id.*

In April 2010, the PCAOB's Division of Enforcement and Investigations ("Enforcement Division") opened an investigation of K&C. *Id.* The Enforcement Division requested that K&C produce all work papers and other documents relating to the audits K&C performed for certain clients, including for Issuers A, B, and C. ER212-13 (Op. 4-5). Kabani testified that he provided the final set of work papers to the PCAOB and that he "d[id] not believe [he] sent any non-final" versions of the work papers to the PCAOB. ER213 (Op. 5).

On February 8, 2011, the Enforcement Division told K&C that the audit file for Issuer A was unreadable. *Id.* That same day, Kabani sent a replacement disk to the PCAOB, at no time suggesting that the replacement file was in any way different from either the file provided to the PCAOB inspectors at the time of inspection or the file previously produced to the Enforcement Division. *Id.*

The Enforcement Division identified numerous examples of documents relating to the Issuer A, B, and C audits that K&C, without the notification required by AS No. 3, added or altered to address deficiencies recognized by Saeed as part of the "cleanup." The Enforcement Division did this in two principal ways: (1) it compared the audit files that Saeed had provided to the ones produced by petitioners, which showed numerous examples of documents being added or altered before the PCAOB inspection but after the documentation completion

10

dates; and (2) it reviewed the metadata[4] in the audit files produced by petitioners, which showed that work papers had been either added late or backdated. ER213-15 (Op. 5-7).

### D. Proceedings before the PCAOB

On June 15, 2012, the PCAOB issued an Order Instituting Disciplinary Proceedings ("OIP") alleging that petitioners violated PCAOB rules and auditing standards by adding, deleting, and/or backdating numerous work papers for several audit engagements, and that, as to at least three of those engagements, petitioners provided work papers to the PCAOB in connection with its inspection of K&C without informing the PCAOB of any such alterations. ER215 (Op. 7). Saeed was named as a respondent in the OIP along with petitioners, but he settled with the PCAOB on May 21, 2013. *Id.*[5]

The evidence before the hearing officer presiding over petitioners' case showed that the files Saeed provided to the PCAOB and the files petitioners produced differed greatly. For example, Saeed had reviewed the audit file for Issuer A in September 2008 (well after the documentation completion date), and

---

[4] Metadata is stored information about a document's properties, including when and by whom it was created and last modified. ER214 (Op. 6).

[5] Saeed was censured and barred from associating with a registered public accounting firm (with leave to petition to terminate the bar in 18 months). ER215 (Op. 7 & n.5).

the file he provided to the PCAOB contained 158 documents, four work paper

folders, and no supporting work papers for 13 of 38 subsidiaries of Issuer A.

ER213 (Op. 5).  But the file that petitioners produced to the Enforcement Division

for Issuer A contained 1,104 work papers, two additional work paper folders, and

446 supporting work papers for the 13 subsidiaries that did not have any work

papers in the file reviewed and provided by Saeed.  *Id.*  There were also over 100

differences in the files that corresponded to the "disparities" that had been

identified during the "clean-up."  *Id.*[6]

Similar differences existed between the files that Saeed reviewed and

provided for Issuers B and C, and the files produced to the PCAOB by petitioners,

likewise responding to deficiencies noted as part of the "clean-up."  ER213-14

(Op. 5-6).  Where Saeed had noted in his review that certain forms were missing,

or signatures on forms were lacking, or forms had dates that did not match or

contained incorrect figures, the audit files that petitioners produced to the PCAOB

---

[6] Petitioners argue in a footnote against the plausibility of what they
characterize as the PCAOB's finding that they added 900 documents to the audit
file for Issuer A between September and October 2008.  Br. 10 n.1.  But the
Commission reasonably concluded that "the Board did not find that [they] created
all approximately 900 new documents" and instead they "could have simply
moved previously existing documents into the Issuer A audit file," which conduct
"would still violate AS No.3."  ER220 (Op. 12).

contained the missing forms and signatures and corrected the incorrect dates and figures. *See id.*[7]

In addition to differences between the files provided by Saeed and the files produced by petitioners indicating that petitioners had altered and added information after the documentation completion dates, the metadata from the files petitioners produced confirmed that work papers had been added late or were backdated. ER214 (Op. 6). Specifically, the metadata showed that the Issuer A file contained 54 documents that had been created and/or modified after the documentation completion date for that audit, Issuer B had 39 documents that had been created and/or modified after the documentation completion date for that audit, and Issuer C had 63 documents that had been created and/or modified after the documentation completion date for that audit. *Id.*

The metadata also showed that the files produced to the PCAOB by petitioners for Issuers A, B, and C contained certain "anomalous documents," in which the metadata timestamp indicating when the document was last modified *predated* the timestamp indicating when the document was created, despite the impossibility of modifying a document before it has been created. *Id.* The

---

[7] The work papers also showed that petitioners had backdated or otherwise altered the auditors' "sign-off" dates for the Issuer A and B audits in an attempt to conceal the fact that some of the audit work had not been completed before the time K&C released their audit reports. ER215 (Op. 7).

PCAOB's expert testified that the metadata pattern for these anomalous documents showed that they had been opened on a computer where the internal computer clock had been *intentionally* set backward in order to deceive and mislead the inspectors as to the true date of the modifications. *Id.* Specifically, the expert explained that users logged in as "Hamid," "Kabani," "Hamid Kabani," "Karim," or "Mohammed," opened documents, made minor, content-neutral changes (such as adding a carriage return after the last line of text), and then saved the file in order to give it a modification timestamp that would match the computer's clock at the time the file was saved. *Id.* In each such document, the new modified dates predated the respective documentation completion dates, suggesting that the modifications were designed to make it look like the files had been completed in time to comply with AS No. 3. *Id.* The PCAOB's expert testified that the consistency of the time period between the created and modified dates, combined with the pattern of content-neutral changes to the documents, makes it "probable that the Anomalous Documents were modified on intentionally backdated machines (rather than modified on inadvertently or randomly backdated machines)." *Id.*

After the hearing, the hearing officer issued an initial decision finding that petitioners violated PCAOB rules "by participating in a 'wide-spread and resource-intensive effort' to alter documents in three issuer audit files in an attempt 'to

14

deceive PCAOB inspectors in an upcoming inspection about the deficiencies in the

Firm's audit work papers.'" ER216 (Op. 8). The hearing officer found that

Kabani's and Deutchman's misconduct was "intentional and knowing," and that

Khan's misconduct was "knowing, intentional, or at least reckless." *Id.* The initial

decision censured all four petitioners; revoked K&C's registration; permanently

barred Kabani, Deutchman, and Khan from associating with a registered public

accounting firm (with leave for Deutchman and Khan to reapply after a specified

time period); and imposed civil penalties on Kabani, Deutchman, and Khan. *Id.*

On petition for review, the PCAOB conducted a *de novo* review of the

record and summarily affirmed the hearing officer's findings.[8] *Id.* The Board

explained that "'the changing, conflicting, and patently incredible explanations for

the[] document alterations offered by [Applicants] throughout this proceeding

accentuate the gravity of the misconduct and underscore how meritless

[Applicants'] arguments to the contrary now are.'" *Id.* The Board therefore

affirmed petitioners' censure and the revocation of K&C's registration;

permanently barred Kabani, Deutchman, and Khan from associating with a

registered public accounting firm (with leave for Deutchman and Khan to reapply

---

[8] The PCAOB found it "unnecessary" to consider the hearing officer's findings that K&C, Kabani, and Deutchman had committed certain quality control violations, and it therefore set those findings aside in light of the sanctions imposed for the other violations. ER216 (Op. 8 n.6). The PCAOB thus did *not* set aside these findings for insufficient proof as petitioners now assert. *See* Br. 30.

15

after two years and 18 months, respectively); and imposed civil penalties of $100,000 on Kabani, $35,000 on Deutchman, and $20,000 on Khan. ER216 (Op. 8).

### E. Proceedings before the Commission

Upon application for Commission review, the Commission conducted an independent, *de novo* review of the record. ER210, 217 (Op. 2, 9). The Commission, in an order dated March 10, 2017, concluded that the PCAOB's findings that petitioners had violated its rules are supported by a preponderance of the evidence in the record and consistent with the purposes of the Sarbanes-Oxley Act. ER216-17 (Op. 8-9) (citing Sarbanes-Oxley Act Section 107(c)(2), 15 U.S.C. § 7217(c)(2)). The Commission explained that the "record shows that [petitioners] added or falsified hundreds of audit documents; intentionally reset internal computer clocks to conceal that the alterations were made before applicable deadlines; and backdated their signatures on relevant work papers." ER210 (Op. 2). The Commission "agree[d] with the PCAOB that this evidence demonstrates a course of misconduct that is troubling on its face and that [petitioners'] changing, conflicting, and patently unbelievable testimony 'accentuates the gravity of the misconduct.'" *Id.*

The Commission concluded that "[a]s the PCAOB held, this '[m]isconduct is especially troubling and deserving of serious sanctions,' because [petitioners]

'went to considerable lengths to conceal their actions.'" *Id.* The Commission found that "[s]ubstantial evidence thus establishes that [petitioners] intentionally and knowingly violated the PCAOB's rules and that the PCAOB's imposition of sanctions for those violations was an appropriate remedy." *Id.* Accordingly, having considered the nature of the violations, potentially mitigating factors, the public interest, and the protection of investors, the Commission determined that the sanctions imposed by the PCAOB are necessary and appropriate in furtherance of the securities laws and are neither excessive, oppressive, inadequate, nor otherwise inappropriate. ER223 (Op. 15) (citing Sarbanes-Oxley Act Section 107(c)(3), 15 U.S.C. § 7217(c)(3)).

In sustaining the PCAOB's decision, the Commission also rejected the constitutional defenses raised by petitioners. ER228-35 (Op. 20-27). The Commission determined that the PCAOB's publication of Saeed's settlement did not deprive petitioners of due process, because the findings of the hearing officer and the Board were grounded on record evidence, not any findings in the settlement order, and because, in any event, the Commission's *de novo* review of the evidence cured any possible bias. ER228-29 (Op. 20-21). The Commission likewise found no due process violation in the hearing officer's decision to deny petitioners' request to designate a substitute expert witness. ER229-31 (Op. 21-23). The Commission reasoned that the denial was well within the officer's

17

discretion to manage the hearing under the circumstances—including the prior exchange of expert witness reports, the multiple extensions of time already granted, and the less than two months then remaining before the hearing—and that petitioners had failed to identify any harm from the denial. *Id.*

The Commission also rejected petitioners' assertion that the PCAOB proceeding violated their rights to a speedy trial and to a jury trial, ruling that petitioners had forfeited this point by failing to raise it before the Board and that, in any event, the asserted rights never attached because the PCAOB proceeding was neither a criminal prosecution under the Sixth Amendment nor a suit at common law under the Seventh Amendment. ER231-33 (Op. 23-25). Finally, the Commission rejected petitioners' argument that the PCAOB's Enforcement Division had failed to turn over exculpatory metadata evidence from the Issuer A audit file as required by *Brady v. Maryland*, 373 U.S. 83, 87 (1963). ER233-35 (Op. 25-27). The Commission reasoned that petitioners had similarly forfeited this argument and that the Issuer A audit file (including any such metadata evidence) was already in petitioners' possession. *Id.* And, to the degree that petitioners demanded that the Enforcement Division search the Issuer A audit file for such metadata evidence, the Commission concluded that this demand improperly attempted to shift responsibility for petitioners' defense to the PCAOB. *Id.*

18

### F.     Proceedings in this Court

Petitioners timely filed their petition for review of the Commission's order in this Court on March 17, 2017.  This Court denied petitioners' motion to stay the non-civil-penalties sanctions pending review, Dkt. 33,[9] and referred to the merits panel petitioners' motion to supplement the record on appeal with two documents that were not part of the administrative record, *id.*[10]

### STANDARD OF REVIEW

The Commission's factual findings, "if supported by substantial evidence, are conclusive."  Exchange Act Section 25(a)(4), 15 U.S.C. § 78y(a)(4); *Steadman v. SEC*, 450 U.S. 91, 96 n.12 (1981); *Krull v. SEC*, 248 F.3d 907, 911 (9th Cir.

---

[9] The Commission had previously denied petitioners' motion for a stay of most of the sanctions, finding that "none of the four factors [the Commission considers] militates in favor of a stay," but it stayed the civil monetary penalties as an exercise of "discretion" "without reference to the applicant's likelihood of success on the merits or the other components of the four-factor test" for a stay. SER4 (Commission Stay Order, Doc. 986, at 4).

[10] Petitioners' opening brief does not appear to cite or rely upon the two documents at issue in their supplementation motion at Dkt. 18.  As such, their motion can simply be denied as moot, as well as for the reasons set forth more fully in the Commission's opposition to the motion at Dkt. 25.  *See, e.g.*, *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) ("[W]e have consistently expressed the view that ordinarily review of administrative decisions is to be confined to consideration of the decision of the agency . . . and of the evidence on which it was based.  [T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.") (internal quotation marks and citations omitted).

2001).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gebhart v. SEC*, 595 F.3d 1034, 1043 (9th Cir. 2010).  "The standard is 'extremely deferential' and a reviewing court must uphold the agency's findings 'unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result.'"  *Id.* (emphasis in original) (citations omitted).  "If the evidence is susceptible to more than one rational interpretation, [this Court] may not substitute [its] judgment for that of the agency."  *Id.*

The Commission's other conclusions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Where, as here, Congress "'has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy[,] the relation of remedy to policy is peculiarly a matter for administrative competence.'"  *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 185 (1973) (citation omitted).

Under this standard of review and the statutory and regulatory scheme discussed *supra* pp. 3-5, it is only the Commission's final order—not the Board's (or the hearing officer's)—that is subject to review in this Court.  *See* 15 U.S.C. § 78y(a); *see also, e.g.*, *Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875,

877-78 (7th Cir. 1985); *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 694-95 (2d Cir. 1952). The Commission independently reviewed the record and made a *de novo* determination that the findings of the PCAOB and the hearing officer were "well supported by the evidence in the record and the law." ER210, 217 (Op. 2, 9).

Petitioners' brief reflects a fundamental misunderstanding of this review scheme. Not only is petitioners' brief written as addressed to, and as seeking relief from, the Commission,[11] but nowhere in the brief do petitioners even acknowledge that the Commission issued an order in this case *at all*, let alone that it is the Commission order that is on review in this appeal. Indeed, every one of petitioners' arguments in their brief assigns errors to conclusions of the Board or hearing officer,[12] failing to mention what the *Commission* held as to the issues on appeal. Because petitioners do not, in fact, challenge a single aspect of the Commission's order, the order could be affirmed (and the petition denied) on that

---

[11] *See*, *e.g.*, Br. 30-31 (claiming that PCAOB "ruling is the basis for Petitioners' application for review" and citing provision allowing for persons aggrieved by PCAOB determination to file application for review with Commission); Br. 67 ("That the PCAOB did not consider this an option before is puzzling, and a mistake that the Commission is able to and should correct."); *id.* ("Petitioners respectfully request that the Commission vacate the PCAOB's sanctions against them . . . .").

[12] *See*, *e.g.*, Br. 31 ("The PCAOB's findings fail to support a strong inference of scienter"); Br. 39 ("The central issue addressed on this appeal concerns the PCAOB's summary affirmance of the sanctions levied against Petitioners . . . ."); Br. 60 ("The hearing officer . . . and the Board affirmed draconian sanctions . . . .").

basis alone.  However, in the event this Court decides to construe petitioners'

arguments as challenges to the decisionmaking reflected in the Commission's

order, the Commission will assume for purposes of this brief that it is the

Commission's analysis on these issues, reflected in its opinion, that the petitioners

seek to challenge in this appeal.[13]

## SUMMARY OF ARGUMENT

Substantial evidence supports the Commission's finding that petitioners

violated PCAOB rules 3100 and 4006 by altering and adding work papers for three

audit files after the documentation completion dates and producing the files to the

PCAOB without notifying it of the late changes.  Both a comparison of the files

produced by petitioners with the documents provided by Saeed and an examination

of the metadata in the files produced by petitioners showed numerous changes

made after the relevant documentation completion dates and evidence of attempts

to conceal such changes.  Petitioners do not challenge most of the Commission's

factual findings.  As to the one argument they do make—an unsupported claim that

the metadata analysis for Issuer A was flawed—it applies only to one of the three

---

[13] Except for petitioners' statute-of-limitations argument, which, as
discussed *infra* pp. 42-43, is doubly forfeited because it was raised neither before
the PCAOB/hearing officer nor before the Commission, the Commission
considered and rejected all of the arguments petitioners raise in their brief to this
Court.

audits at issue, and, in any event, substantial evidence supports the Commission's finding that petitioners' contention is unsupported by the record.

The Commission acted within its discretion in upholding the sanctions imposed by the PCAOB. More than substantial evidence supported the Commission's finding that petitioners acted intentionally, knowingly, or at a minimum recklessly, as required to support the revocation of K&C's registration and the bars imposed on petitioners. And the Commission did not abuse its discretion in concluding that petitioners' egregious attempts to deceive PCAOB inspectors rendered the sanctions imposed not excessive, oppressive, or otherwise inappropriate.

The Commission also correctly concluded that petitioners received a fair hearing before the PCAOB. The Commission properly rejected petitioners' numerous claims of "due process" violations, finding that (1) the PCAOB hearing officer acted within its discretion in denying petitioners' request to designate a substitute expert witness and any error was harmless; (2) the PCAOB hearing officer was not insufficiently experienced and any error was harmless; (3) the PCAOB hearing officer did not apply an incorrect burden of proof; and (4) the PCAOB's publication of its settlement with Saeed did not unfairly prejudice petitioners and any error was harmless. Petitioners' statute-of-limitations argument, raised for the first time on appeal, is both forfeited and frivolous, as

23

petitioners rely on an inapposite statute and, even if that statute applied, the proceeding would still be timely.

As to petitioners' other constitutional arguments (based on *Brady v. Maryland*, the Sixth Amendment right to a speedy trial, and the Seventh Amendment right to a jury trial), the Commission correctly concluded that petitioners forfeited those arguments by failing to raise them to the PCAOB or PCAOB hearing officer and that, in any event, they are without merit. The right to a speedy trial and jury trial do not apply in the context of a PCAOB disciplinary proceeding, and to the extent the Enforcement Division had *Brady*-like obligations under PCAOB rules, no violation of those obligations occurred.

## ARGUMENT

**I.    Substantial evidence supports the Commission's finding that petitioners altered and added work papers for three audit files after the documentation completion dates and produced the files to the PCAOB without informing it of the late changes.**

The Commission concluded that "[a] preponderance of the evidence shows that Kabani devised and (with Deutchman and Khan) executed a plan to improperly alter and add work papers in the Issuer A, B, and C audit files" in an effort to conceal deficiencies and that these efforts yielded the audit files that were produced to the Enforcement Division. ER217 (Op. 9). The Commission explained that both a comparison of the files produced by petitioners to those

provided by Saeed, as well as an examination of the metadata in the files produced by petitioners, "reveal numerous examples of changes made after the respective documentation completion dates and evidence of attempts to conceal the changes." *Id.* Petitioners did not tell the PCAOB about any of these changes, "leaving the false impression that they had properly assembled complete and final audit files and done so by the deadlines under the auditing rules." *Id.* There is abundant evidence, discussed more fully *supra* pp. 5-16, to support these conclusions.

Petitioners do not challenge most of the Commission's factual findings. Indeed, the only argument petitioners make against the Commission's liability findings is their claim, without any citation to the record, that the metadata analysis for Issuer A proffered by the PCAOB's expert witness was flawed because the file properties for the Issuer A audit files were changed in the process of producing them again after being told that the Enforcement Division could not read the file petitioners originally produced for Issuer A. Br. 58-60, 66. But the Commission correctly rejected this argument for several reasons.

*First*, as the Commission recognized, even if this argument were true, it applies only to Issuer A, and thus does not in any way explain why, as discussed *supra* p. 13, there was also anomalous metadata found for Issuers B and C. ER220 (Op. 12).

*Second*, petitioners again incorrectly argue, without any citation to the record, that "when Petitioners copied the JPEG files into Adobe format, the Adobe metadata listed a recent modification date, but the metadata for the JPEG file, which was still part of the file, had the original metadata dates which is direct evidence that the correct and complete work papers were already in the file and were not changed in anticipation of a PCAOB investigation." Br. 60. The Commission reviewed this contention, and the referenced documents, and "f[ou]nd no significance" to the documents, because the metadata for both the JPEG and the PDF versions of the documents reflected the same creation and modification dates. ER220 (Op. 12 n.17). Petitioners do not address or dispute the Commission's finding, let alone show that it was not based on substantial evidence.

*Third*, petitioners claim, as they did before the Commission, that "even the developer of the [software], Thomson Reuters, indicated that they believe the two files, the one which could be opened by the PCAOB staff and the one that could not be opened, were different files," with "different sizes and different names." Br. 66. But neither in this Court nor before the Commission have petitioners cited to the record or sought to introduce evidence that Thompson Reuters ever made this statement. ER220 (Op. 12). And, as the Commission correctly explained, "in fact, the two files had the *same* file name—a fact to which . . . K&C, Kabani, and Deutchman stipulated during the PCAOB proceeding." *Id.* (emphasis in original).

26

Finally, the PCAOB's expert also explained in his report that any size difference between a corrupt and non-corrupt file "is not a reliable indication that the contents of the pre-corrupt version were more or less extensive than those of the second file." *Id.* Petitioners again provide no response to these factual findings by the Commission and thus no basis to overturn the Commission's liability determination, which is supported by substantial evidence.[14]

## II.  The Commission acted within its discretion in sustaining the sanctions imposed on petitioners.

Petitioners challenge the sanctions imposed on them on two grounds—
(1) that the Commission failed to establish that petitioners' violations were made with the requisite mental state; and (2) that the Commission failed to consider the petitioners' disciplinary history and the appropriateness of lesser sanctions—but neither contention has merit.

---

[14] Petitioners also suggest (albeit only in the introduction and not in the argument section of their brief) that the hearing officer gave undue weight to the self-interested testimony of Saeed. Br. 12-14. But the Commission reasonably concluded that the hearing officer's credibility findings were owed deference given his role as the factfinder, that the hearing officer adequately considered the concerns surrounding Saeed's testimony, and that the documentary evidence corroborated that petitioners had asked Saeed to review the final audit files. ER218 (Op. 10).

### A. Substantial evidence supports the Commission's findings that petitioners' violations were intentional, knowing, or reckless.

Under the Sarbanes-Oxley Act, in order to revoke a firm's registration or bar associated persons from future association with the Board, as apposite here, the Board must find "intentional or knowing conduct, including reckless conduct, that results in a violation of the applicable statutory, regulatory, or professional standard." 15 U.S.C. § 7215(c)(5). Recklessness is defined as an "extreme departure from the standards of ordinary care, . . . which presents a danger" to investors or the markets "that is either known to the (actor) or is so obvious that the actor must have been aware of it." *Gately & Assocs., LLC*, Exchange Act Release No. 62656, 2010 WL 3071900, at *11 (Aug. 5, 2010) (quoting, *e.g.*, *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992)).

The Commission's conclusion that "the record supports the Board's finding that [petitioners'] conduct was knowing, intentional, or at a minimum reckless," ER223 (Op. 15), is supported by substantial evidence. As to Kabani, as discussed more fully *supra* pp. 5-16, "Kabani devised and directed K&C's 'PCAOB Cleanup,' during which K&C staff undertook an urgent and intensive effort to identify and fix deficiencies in the Issuer A, B, and C audit files after the documentation completion dates," and "Kabani then personally produced the Issuer A, B, and C audit files to PCAOB inspectors without disclosing what he

28

knew to be alterations and additions to those files." ER223-24 (Op. 15-16). There is therefore more than substantial evidence to support the Commission's conclusion that "Kabani's conduct resulted in intentional and knowing violations of PCAOB rules." ER224 (Op. 16).

As for K&C, the Commission found that "Kabani's mental state is also attributable to K&C because Kabani was the sole shareholder and head of the firm and he engaged in the violative conduct within the scope of his authority," a conclusion petitioners do not challenge on appeal. *Id.*

As to petitioner Deutchman, as discussed more fully *supra* pp. 5-16, he "identif[ied] and fix[ed] deficiencies in the audit files and encourag[ed] Saeed to do the same," *id.*, which provides substantial evidence for the Commission's conclusion "that Deutchman also intentionally and knowingly, or at least recklessly, participated in Kabani's 'PCAOB Cleanup' scheme." *Id.* As the Commission correctly recognized, "[a]lthough Deutchman did not personally produce the audit files to the PCAOB, he knew (or was reckless in not knowing) that the altered files would be provided to PCAOB inspectors without proper disclosures," and "[a]s an experienced accountant and the firm's director of audit and accounting, Deutchman knew (or was reckless in not knowing) that these actions violated applicable audit documentation standards and would interfere with the PCAOB's inspection." *Id.*

29

As to Khan, as discussed more fully *supra* pp. 5-16, he "was directly involved in furthering the 'PCAOB Cleanup' scheme by coordinating Saeed's . . . efforts to fix deficiencies in the Issuer A audit file." *Id.* He also "admitted that the Issuer A audit file had not been completely assembled by that audit's documentation completion date." *Id.* There is therefore substantial evidence to support the Commission's conclusion that "[a]s a certified public accountant who oversaw the general audit work at the firm, Khan knew or was reckless in not knowing that the Issuer A audit files did not comply with AS No. 3 and that the attempts to fix the file's deficiencies without identifying those alterations to the PCAOB would interfere with the PCAOB's ability to carry out its inspection." *Id.*

Petitioners make two meritless arguments for why there is not substantial evidence to support the Commission's findings that petitioners acted with the requisite mental state for the sanctions imposed. *First*, they argue that the evidence showing petitioners' mental state was only "circumstantial" and not "direct." Br. 64-65; *see also* Br. 35-36 ("[T]he circumstantial evidence that the PCAOB offers as probative of guilt is based on an impermissible pyramiding of inference upon inference upon inference to reach a result."). But as the Commission correctly explained, petitioners' "admit[ted] to much of their conduct," ER224 (Op. 16), thus providing direct evidence, and, in any event, "it is precisely because . . . direct proof of fraudulent intent is rarely available that courts allow a finding of

30

fraudulent intent based on circumstantial evidence." *In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008); *see also United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992) ("Knowledge of fraudulent purpose, as an aspect of intent to defraud, need not be shown by direct evidence, but may also be established by circumstantial evidence.").[15] *Second*, petitioners simply repeat their argument that the metadata analysis was flawed because of the corrupted Issuer A audit file, which fails for the reasons discussed *supra* pp. 25-27.

### B. The Commission acted well within its discretion in concluding that the sanctions imposed on petitioners were not excessive, oppressive, or otherwise inappropriate.

The Commission found that the revocation of K&C's registration, and the bars on Kabani, Deutchman, and Khan (with leave for Deutchman and Khan to petition the PCAOB for termination of the bar after two years and 18 months, respectively), were appropriate in light of petitioners' conduct. ER225 (Op. 17). The PCAOB considers the AS No. 3 standard that petitioners violated to be "'one of the fundamental building blocks on which both the integrity of audits and the Board's oversight will rest,'" because "'[c]lear and comprehensive audit documentation is essential to enhance the quality of the audit and, at the same time,

---

[15] Petitioners cite several authorities addressing proof of recklessness by auditors in connection with fraud at an issuer, Br. 32-35, but those authorities are inapposite because they do not address recklessness by auditors in connection with the auditors' own violations of applicable auditing and documentation standards.

to allow the Board to fulfill its mandate to inspect registered public accounting firms to assess the degree of compliance of those firms with applicable standards and laws.'" *Id.* (quoting AS No. 3, Appendix A, ¶ A4). The Commission therefore did not abuse its discretion in finding that petitioners "acted egregiously" by not only failing to abide by the required standards, but also by "embark[ing] on a determined effort to undermine the PCAOB's regulatory responsibilities by deceiving PCAOB inspection staff about whether K&C's documentation complied with applicable auditing standards." *Id.* The Commission noted that petitioners' "scheme involved several weeks of sustained effort to identify and correct hundreds of deficiencies in multiple issuer files." *Id.*

Furthermore, the Commission found that "[a]s senior management, Kabani and Deutchman had a heightened responsibility to ensure that they and the firm complied with PCAOB's inspections and document requirements. Instead, Kabani concocted a scheme—which he and Deutchman directed—to hide K&C's documentation failures from the PCAOB." *Id.* And while "Khan was less senior, he still possessed significant responsibility over the Issuer A audit and had a professional obligation to ensure the file complied with PCAOB's auditing standards. Yet he also actively participated in the alteration or addition of work papers and directed other staff to do so." *Id.*

The Commission also reasonably concluded that the sanctions were not excessive, oppressive, or otherwise inappropriate because petitioners' "misconduct also involved a high degree of scienter." *Id.* As the Commission explained, petitioners were "experienced auditors who knowingly, intentionally, and recklessly subverted basic regulatory standards, thus demonstrating an extreme disregard for regulatory authority over a prolonged period." ER225-26 (Op. 17-18).

The Commission also found that the injunctive sanctions were appropriate because "[a]llowing K&C to remain registered and Kabani, Deutchman, and Khan to remain associated persons would give them future opportunities to undermine the PCAOB's regulatory processes," given that petitioners "continue to practice as public auditors" and therefore they "each pose a continuing danger to the investing public." ER226 (Op. 18).

Petitioners fail to show that the Commission's consideration of their sanctions was an abuse of discretion. They make two arguments for a lesser sanction, neither of which has merit. *First*, they incorrectly argue that "none of the Petitioners have a prior history of discipline." Br. 65. But as the Commission explained, Deutchman *does* have a disciplinary history, which the Commission found to be an aggravating factor, and, in any event, the lack of disciplinary history does not mitigate petitioners' misconduct because petitioners "are required to

adhere to their regulatory obligations." ER226 (Op. 18) (citing, *e.g.*, *Siegel v. SEC*, 592 F.3d 147, 156–57 (D.C. Cir. 2010) (lack of disciplinary history is not mitigating because "associated person should not be rewarded for acting in compliance with the securities laws and with his duties as a securities professional"); *Rooms v. SEC*, 444 F.3d 1208, 1214 (10th Cir. 2006) ("[l]ack of a disciplinary history is not a mitigating factor; [respondent] was required to comply with the NASD's high standards of conduct at all times")).

*Second*, petitioners' argument that the hearing officer should have considered imposing lesser sanctions such as "education and training," Br. 65, lacks force given the Commission's thorough discussion of why the revocation and bars were appropriate in this case, *see supra* pp. 31-33. And, in any event, the Commission agreed with the Board's decision, based on Deutchman's and Khan's relatively lesser roles, to allow them to petition the PCAOB to terminate their bars after a period of time. ER227 (Op. 19). Petitioners therefore have not shown that the Commission abused its discretion in finding that the PCAOB's sanctions were not excessive, oppressive, or otherwise inappropriate.

## III. The Commission correctly concluded that petitioners received a fair hearing.

Petitioners level a host of meritless procedural complaints about the PCAOB disciplinary proceeding, alleging that their due process[16] and other constitutional rights were violated. The Commission considered and rejected all of petitioners arguments,[17] petitioners do not cite any authority that the Commission overlooked, and the record shows that substantial evidence supported the Commission's factual findings and that the Commission's legal conclusions were not an abuse of discretion. Petitioners' bare disagreement with the outcome of the proceedings is insufficient to overturn the Commission's order.

### A. Petitioners received a fair hearing before the PCAOB and hearing officer and all process they were due.

#### 1. The Commission correctly found that the PCAOB hearing officer acted within its discretion in denying petitioners' request to designate a substitute expert witness and that, in any event, any error was harmless.

---

[16] Petitioners argue (Br. 37-42) that they have a property right to their profession that is protected by the due process clause of the Constitution. The Commission will assume, *arguendo*, that they do, because petitioners' arguments fail for other reasons. The Commission will also assume, *arguendo*, that the Constitution's due process requirements apply to PCAOB disciplinary proceedings. ER228 (Op. 20 & n.48).

[17] The only argument that the Commission did not consider is petitioners' statute-of-limitations argument, newly raised on appeal, which fails for the reasons discussed *infra* pp. 42-43.

The Commission correctly rejected petitioners' contention (Br. 45-49) that the PCAOB violated their due process rights by denying their request to designate a substitute expert witness. In September 2012, the Enforcement Division informed petitioners in a pre-hearing conference that it intended to call a data forensics expert as a witness. ER229 (Op. 21). Petitioners then asked for,[18] and obtained, two extensions of the pre-hearing deadlines. *Id.* On December 14, 2012, petitioners and the Enforcement Division exchanged expert reports. *Id.* Petitioners moved to strike the Enforcement Division's expert, so the hearing officer extended the scheduling deadline twice more in order to consider that motion, which he ultimately denied. *Id.* The parties exchanged revised expert reports on January 28, 2013. *Id.* In March 2013, the hearing officer granted petitioners' motions for extensions of the pre-hearing deadlines again, this time because petitioners had replaced their counsel. *Id.* At that time, the hearing officer explained that "[a]bsent a showing of exigent, unforeseen circumstances, [he was] unlikely to grant any further requests for extensions" of the pre-hearing deadlines. ER229-30 (Op. 21-22).

A month after the deadline for the filing of exhibits had passed, however, petitioners asked for just such an extension, explaining that they had retained a

---

[18] At this point in the proceedings Khan was representing himself and did not join in the motions petitioners made with respect to these issues. ER229 (Op. 21 & n.54).

new, different expert than the one that had already submitted a report, and they wanted to substitute this new expert because the new counsel thought this substitute expert would be more effective. ER230 (Op. 22). Petitioners sought an extension of the deadlines to file a new report and present the new expert's testimony. *Id.*

The hearing officer denied the motion. He concluded that "[r]egretting the selection of an expert . . . does not constitute good cause to amend the schedule . . . less than two months before the hearing." *Id.* Petitioners therefore agreed at the final pre-hearing conference to use their original expert, but petitioners did not call him at the actual hearing because of a dispute over an unpaid invoice and other communication difficulties. *Id.* In an attempt to accommodate petitioners, the hearing officer extended the hearing schedule to permit the original expert to appear by video, but petitioners were unable to secure his testimony. *Id.* The substitute expert was allowed to attend the hearing and consult with petitioners' counsel. *Id.*

The Commission acted within its discretion in concluding that this "evidence show[ed] that the hearing officer acted well within his discretion to manage the course of a hearing by repeatedly attempting to accommodate [petitioners'] pre-hearing requests," and that "a party's untimely decision to change witnesses is not a valid basis for disrupting a fair and reasonable scheduling order."

37

ER229-30 (Op. 21-22). Petitioners' only argument to the contrary is their claim that there was no prejudice to the Enforcement Division and only slight inconvenience to the hearing officer from their requested substitution. Br. 45-49. But the Commission concluded that "the absence of prejudice to the opposing party is not equivalent to a showing of good cause" and that courts have repeatedly found that an untimely decision to change witnesses is not a valid basis for disrupting a reasonable scheduling order, ER230 (Op. 22) (citing cases), and petitioners have identified no basis for challenging these conclusions.

Furthermore, the Commission also found that petitioners had "not explained how their expert would have controverted the findings of the Division of Enforcement's expert" and thus found "no reversible error in the hearing officer's decision not to amend the scheduling order to allow [petitioners] to designate a replacement expert." ER231 (Op. 23). Petitioners' brief in this Court suffers from the same defect, and therefore they cannot demonstrate that the Commission's conclusions were an abuse of discretion.

> ### 2. The Commission correctly found that the PCAOB hearing officer did not lack sufficient experience and that, in any event, any error was harmless.

Petitioners' claims that the PCAOB hearing officer had "no experience in the practice of auditing and accounting," was "unfamiliar with the case," and therefore unduly relied "upon the PCAOB's legal conclusions and the analysis of

its expert" to deny petitioners a fair hearing, Br. 56-57, provide no basis for granting their petition. The Commission found the hearing officer's findings "well supported" and therefore rejected petitioners' argument that the PCAOB decision should be set aside on the basis of the hearing officer's supposed lack of experience and/or familiarity with the case. ER217 (Op. 9 & n.10). In addition, the Commission explained that, "based on [its] *de novo* review," it "agree[d] with the PCAOB that the Hearing Officer's findings are well supported by the evidence in the record and the law." *Id.* Therefore, petitioners' argument fails both because they identify no abuse of discretion in the Commission's rejection of their claim that the hearing officer was improperly inexperienced and because, even if petitioners were correct, any prejudice to them was cured by the Commission's own *de novo* review of the record.

### 3. The Commission correctly found that the PCAOB hearing officer did not apply an incorrect burden of proof.

Before the hearing officer, petitioners claimed as a defense to liability that Saeed was tasked with reviewing *non-final* work papers for internal quality-control purposes, which explained why the comparison between the files he provided and the files petitioners produced showed different results. The Commission, reviewing the evidence *de novo*, found that the only evidence for this claim was petitioners' own testimony, which was either "not supported by or . . . inconsistent

39

with the other record evidence." ER217 (Op. 9). Specifically, Kabani's testimony at the hearing contradicted his own testimony during the prior investigation, in which he admitted that he engaged Saeed to inspect the final versions of the work papers. ER218 (Op. 10). It also contradicted the record evidence, which showed that Saeed's checklist for the "clean-up" contained a requirement applicable only to final audit files. *Id.* In addition, none of the contemporaneous emails with respect to the "clean-up" mentioned or suggested in any way that the review was of non-final files for internal quality-control purposes only. *Id.*

The Commission also credited Saeed's testimony that he was tasked with reviewing the final files, corroborated by the contemporaneous emails and audit files, and found that petitioners' testimony on the other hand "lacked credibility." *Id.* Petitioners at the hearing had denied understanding what the terms "PCAOB Cleanup" or "PCAOB Cleaning-up" meant; Kabani said he had "no idea any PCAOB cleanup was going on at the time"; and Khan offered that perhaps the junior staffer in charge of the project "was asking the PCAOB to clean something" or that "it looks like PCAOB is cleaning something." *Id.* The Commission agreed with the hearing officer's assessment that "[n]ot only was this testimony not credible, . . . it was so incredible that it undermined [petitioners'] overall credibility." *Id.*

40

Petitioners claim in this appeal that the hearing officer, in stating in his initial decision that petitioners "never proved . . . that [Saeed] was reviewing the documents solely for quality control purposes or that he was reviewing non-final versions of the audit work papers," improperly shifted the burden of proof by requiring petitioners to prove that Saeed was reviewing non-final work papers. Br. 50-53. But petitioners misunderstand the context in which the hearing officer made this statement. While petitioners clearly did not have the burden of proof as to liability, once the Enforcement Division submitted evidence that in fact petitioners reviewed and altered final work papers after the applicable documentation completion deadlines, as the Division did here, *see supra* pp. 10, 27, 40, then the burden did fall on petitioners to identify evidence to corroborate their alternative account of the facts. *See*, *e.g.*, *Atlanta-One, Inc. v. SEC*, 100 F.3d 105, 109-10 (9th Cir. 1996) (asking respondent in NASD proceeding to explain certain allegedly excessive commissions did not impermissibly shift burden of proof). Because petitioners failed to identify any such corroborating evidence beyond their own implausible testimony, *see supra* pp. 39-40, the Commission acted well within its discretion in concluding that the hearing officer did not misapply the burden of proof. ER219-20 (Op. 11-12).

41

4. **The Commission correctly concluded that the PCAOB did not violate petitioners' rights by publishing the settlement with Saeed and that, in any event, any error was harmless.**

Petitioners' rights were not violated by the publication of Saeed's settlement on the PCAOB's website (Br. 43-45), because, as the Commission explained, there was "no evidence" that the findings of the PCAOB hearing officer and Board were grounded on anything other than the record evidence. ER228 (Op. 20). Rather, both the PCAOB and hearing officer expressly stated that their findings "were grounded on record evidence, not on any finding in Saeed's settlement order." *Id.* Petitioners point to nothing on appeal calling into question the Commission's conclusion. And, in any event, as the Commission explained and petitioners do not dispute, the Commission's *de novo* review of the record "cures whatever bias, if any, that may have existed." ER228-29 (Op. 20-21).

5. **Petitioners' statute-of-limitations argument is forfeited and frivolous.**

Petitioners claim (Br. 42-43) that the four-year statute of limitations in 28 U.S.C. § 1658 bars this proceeding. *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."). But petitioners never raised this argument to the Commission below, and thus it is forfeited. *See*, *e.g.*, *Exxon Mobil*

42

*Corp. v. EPA*, 217 F.3d 1246, 1249 (9th Cir. 2000) ("Petitioners have waived their right to judicial review of these final two arguments as they were not made before the administrative agency . . . and there are no exceptional circumstances warranting review."); *see also Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) ("A party forfeits arguments that are not raised during the administrative process."). Nor did they raise this argument to the PCAOB or hearing officer, rendering it doubly forfeited. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 88-90 (2006).

Even if petitioners had raised this statute-of-limitations argument below, it is frivolous. Among other things, the statute petitioners cite is inapplicable to PCAOB disciplinary proceedings; it applies to civil actions arising under Acts of Congress. *See* 28 U.S.C. § 1658. And *even if* the four-year time period from this statute did apply, this action was initiated on June 15, 2012, and the PCAOB inspection of the relevant audit files was on October 20, 2008, within the four-year period. *See supra* pp. 7-9.[19]

---

[19] Petitioners claim that the PCAOB reviewed the audit files "by June 2, 2008," Br. 42, but June 2, 2008 was the date that the PCAOB's Inspections Division informed K&C that it would be inspecting K&C's audit records; the inspection did not occur until October. ER211-12 (Op. 3-4).

**B.    Petitioners' claims of other constitutional violations are forfeited and, in any event, without merit.**

**1.    There was no *Brady* violation of petitioners' rights.**

Petitioners incorrectly claim that the Enforcement Division violated its obligations under *Brady v. Maryland*, which requires the prosecution in a criminal proceeding to disclose materially exculpatory or impeaching evidence to the defendant.  373 U.S. 83, 87 (1963).

*First*, the Commission did not abuse its discretion in finding that petitioners had forfeited this argument by failing to raise it before the PCAOB.  ER233-34 (Op. 25-26) (citing *optionsXpress, Inc.*, Exchange Act Rel. No. 70698, 2013 WL 5635987, at *5 (Oct. 16, 2013) (finding failure to raise *Brady* claim to law judge as sufficient reason to deny claim)).  Petitioners provide no excuse on appeal for their failure to raise this claim before the PCAOB and no basis for challenging the Commission's conclusion.

*Second*, *Brady* applies to criminal prosecutions and does not by itself apply to administrative proceedings such as proceedings before the PCAOB.  And even if petitioners' claim were construed as a challenge to the Enforcement Division's compliance with PCAOB Rule 5422(b), which does prohibit interested PCAOB divisions from withholding documents that contain "material exculpatory

44

evidence" in connection with disciplinary proceedings, petitioners' argument fails on the merits.

Petitioners claim that the Enforcement Division withheld metadata evidence in the original, unreadable, Issuer A file, Br. 49, but petitioners themselves produced that file and therefore had access to it, *see supra* p. 10, and they have not pointed to any exculpatory data from that file. *See Rhoades v. Henry*, 598 F.3d 495, 502 (9th Cir. 2010) ("[N]o *Brady* violation occurs when a defendant possessed the information that he claims was withheld."); *see also* ER234 (Op. 26). Finally, the Commission did not abuse its discretion in concluding that petitioners' speculation that "the PCAOB's expert or other investigators" should have "attempt[ed] to verify other contemporaneous electronic documents generated contemporaneously with the work papers," Br. 50, "is not a *Brady* argument, but an improper attempt to shift responsibility for defending themselves to the PCAOB." ER234 (Op. 26). *See*, *e.g.*, *United States v. Zambrana*, 841 F.2d 1320, 1328 (7th Cir. 1988) ("[W]e remind defense counsel that it is incumbent upon him to make specific requests for specific evidence in the possession of the prosecution, and it is not the responsibility of the prosecutor or the judge to do the work of the defense counsel.").

**2. There was no violation of petitioners' Sixth Amendment right to a speedy trial or Seventh Amendment right to a jury trial.**

Petitioners' claims that their Sixth Amendment right to a speedy trial and Seventh Amendment right to a jury trial were violated lack merit. Br. 54-56, 57-58. Petitioners on appeal provide no argument that the Commission abused its discretion in concluding that petitioners forfeited these arguments by failing to raise them before the PCAOB. ER231 (Op. 23).

And in any event, as the Commission correctly recognized, *see* ER231-32 (Op. 23-24), the Sixth Amendment applies only to criminal prosecutions. *See, e.g.*, *Hannah v. Larche*, 363 U.S. 420, 440 n.16 (1960). Petitioners cite two district court cases for the proposition that the imposition of a fine can be considered quasi-criminal, Br. 55, but "only the clearest proof will suffice to override legislative intent and transform . . . a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100 (1997) (Double Jeopardy Clause does not apply to civil banking sanctions) (internal quotation marks omitted). Likewise, the Supreme Court has held that "the Seventh Amendment is not applicable to administrative proceedings." *Tull v. United States*, 481 U.S. 412, 418 n.4 (1987). Petitioners therefore have not shown that the Commission incorrectly concluded that for PCAOB proceedings, like other self-regulatory organization disciplinary proceedings, "the Sixth and Seventh Amendments have no relevance," because the

46

proceeding "is neither a criminal prosecution within the meaning of the Sixth Amendment nor a suit at common law within the meaning of the Seventh Amendment." ER233 (Op. 25) (internal quotation marks and alteration omitted).

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for review and affirm the Commission's order.

Respectfully submitted,

ROBERT B. STEBBINS
General Counsel

MICHAEL A. CONLEY
Solicitor

STEPHEN G. YODER
Senior Litigation Counsel

/s/   Emily T.P. Rosen
EMILY T.P. ROSEN
Senior Counsel

Securities and Exchange Commission
100 F St., N.E.
Washington, D.C. 20549
(202) 551-5169 (Rosen)
rosene@sec.gov

December 2017

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [10480] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [⎽⎽⎽⎽⎽]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [⎽⎽⎽⎽⎽] words or [⎽⎽⎽⎽⎽] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [s/ Emily T.P. Rosen] Date [Dec 1, 2017]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## STATEMENT OF RELATED CASES

The Securities and Exchange Commission is not aware of any related case pending in this Court.

# STATUTORY AND REGULATORY ADDENDUM

# STATUTORY AND REGULATORY ADDENDUM

## TABLE OF CONTENTS

5 U.S.C. 706…………………………………………………………..…1a

15 U.S.C. 78y(a)…………………………………………………………2a

15 U.S.C. 7211(a), (c)……………………………………………………3a

15 U.S.C. 7212……………………………………………………….…...5a

15 U.S.C. 7213(a)(1)………………………………………………….…..8a

15 U.S.C. 7215(a), (b)(1), (c), (e)………...……………………………….9a

15 U.S.C. 7217(a), (c)………………………...…………………….……...13a

28 U.S.C. 1658……………………………...…………………….………15a

PCAOB Rule 3100……..…………………...…………………….……...16a

PCAOB Rule 4006……..…………………...…………………….……...16a

PCAOB Rule 5422(b)……..…………………...…………………….……...17a

Auditing Standard No. 3…....…………………...…………………….……...18a

## 5 U.S.C. 706

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

    **(1)** compel agency action unlawfully withheld or unreasonably delayed; and

    **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--

        **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

        **(B)** contrary to constitutional right, power, privilege, or immunity;

        **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

        **(D)** without observance of procedure required by law;

        **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

        **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 15 U.S.C. 78y(a)

§ 78y. Court review of orders and rules

**(a) Final Commission orders; persons aggrieved; petition; record; findings; affirmance, modification, enforcement, or setting aside of orders; remand to adduce additional evidence**

   **(1)** A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

   **(2)** A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated by the Commission for that purpose. Thereupon the Commission shall file in the court the record on which the order complained of is entered, as provided in section 2112 of Title 28 and the Federal Rules of Appellate Procedure.

   **(3)** On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.

   **(4)** The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.

   **(5)** If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there was reasonable ground for failure to adduce it before the Commission, the court may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate. If the case is remanded to the Commission, it shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order.

## 15 U.S.C. 7211(a), (c)

§ 7211. Establishment; administrative provisions

### (a) Establishment of Board

There is established the Public Company Accounting Oversight Board, to oversee the audit of companies that are subject to the securities laws, and related matters, in order to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports. The Board shall be a body corporate, operate as a nonprofit corporation, and have succession until dissolved by an Act of Congress.

**...**

### (c) Duties of the Board

The Board shall, subject to action by the Commission under section 7217 of this title, and once a determination is made by the Commission under subsection (d) of this section--

**(1)** register public accounting firms that prepare audit reports for issuers, brokers, and dealers, in accordance with section 7212 of this title;

**(2)** establish or adopt, or both, by rule, auditing, quality control, ethics, independence, and other standards relating to the preparation of audit reports for issuers, brokers, and dealers, in accordance with section 7213 of this title;

**(3)** conduct inspections of registered public accounting firms, in accordance with section 7214 of this title and the rules of the Board;

**(4)** conduct investigations and disciplinary proceedings concerning, and impose appropriate sanctions where justified upon, registered public accounting firms and associated persons of such firms, in accordance with section 7215 of this title;

**(5)** perform such other duties or functions as the Board (or the Commission, by rule or order) determines are necessary or appropriate to promote high professional standards among, and improve the quality of audit services offered by, registered public accounting firms and associated persons thereof, or otherwise to carry out this Act, in order to protect investors, or to further the public interest;

(**6**) enforce compliance with this Act, the rules of the Board, professional standards, and the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, by registered public accounting firms and associated persons thereof; and

(**7**) set the budget and manage the operations of the Board and the staff of the Board.

**15 U.S.C. 7212**

§ 7212. Registration with the Board

**(a) Mandatory registration**

It shall be unlawful for any person that is not a registered public accounting firm to prepare or issue, or to participate in the preparation or issuance of, any audit report with respect to any issuer, broker, or dealer.

**(b) Applications for registration**

   **(1) Form of application**

   A public accounting firm shall use such form as the Board may prescribe, by rule, to apply for registration under this section.

   **(2) Contents of applications**

   Each public accounting firm shall submit, as part of its application for registration, in such detail as the Board shall specify--

      **(A)** the names of all issuers, brokers, and dealers for which the firm prepared or issued audit reports during the immediately preceding calendar year, and for which the firm expects to prepare or issue audit reports during the current calendar year;

      **(B)** the annual fees received by the firm from each such issuer, broker, or dealer for audit services, other accounting services, and non-audit services, respectively;

      **(C)** such other current financial information for the most recently completed fiscal year of the firm as the Board may reasonably request;

      **(D)** a statement of the quality control policies of the firm for its accounting and auditing practices;

      **(E)** a list of all accountants associated with the firm who participate in or contribute to the preparation of audit reports, stating the license or certification number of each such person, as well as the State license numbers of the firm itself;

      **(F)** information relating to criminal, civil, or administrative actions or disciplinary proceedings pending against the firm or any associated person of the firm in connection with any audit report;

      **(G)** copies of any periodic or annual disclosure filed by an issuer, broker, or dealer with the Commission during the immediately preceding calendar year which discloses accounting disagreements between such issuer, broker, or

dealer and the firm in connection with an audit report furnished or prepared by the firm for such issuer, broker, or dealer; and

**(H)** such other information as the rules of the Board or the Commission shall specify as necessary or appropriate in the public interest or for the protection of investors.

### (3) Consents

Each application for registration under this subsection shall include--

**(A)** a consent executed by the public accounting firm to cooperation in and compliance with any request for testimony or the production of documents made by the Board in the furtherance of its authority and responsibilities under this subchapter (and an agreement to secure and enforce similar consents from each of the associated persons of the public accounting firm as a condition of their continued employment by or other association with such firm); and

**(B)** a statement that such firm understands and agrees that cooperation and compliance, as described in the consent required by subparagraph (A), and the securing and enforcement of such consents from its associated persons, in accordance with the rules of the Board, shall be a condition to the continuing effectiveness of the registration of the firm with the Board.

### (c) Action on applications

#### (1) Timing

The Board shall approve a completed application for registration not later than 45 days after the date of receipt of the application, in accordance with the rules of the Board, unless the Board, prior to such date, issues a written notice of disapproval to, or requests more information from, the prospective registrant.

#### (2) Treatment

A written notice of disapproval of a completed application under paragraph (1) for registration shall be treated as a disciplinary sanction for purposes of sections 7215(d) and 7217(c) of this title.

### (d) Periodic reports

Each registered public accounting firm shall submit an annual report to the Board, and may be required to report more frequently, as necessary to update the information contained in its application for registration under this section, and to provide to the Board such additional information as the Board or the Commission may specify, in accordance with subsection (b)(2).

**(e) Public availability**

Registration applications and annual reports required by this subsection, or such portions of such applications or reports as may be designated under rules of the Board, shall be made available for public inspection, subject to rules of the Board or the Commission, and to applicable laws relating to the confidentiality of proprietary, personal, or other information contained in such applications or reports, provided that, in all events, the Board shall protect from public disclosure information reasonably identified by the subject accounting firm as proprietary information.

**(f) Registration and annual fees**

The Board shall assess and collect a registration fee and an annual fee from each registered public accounting firm, in amounts that are sufficient to recover the costs of processing and reviewing applications and annual reports.

<u>**15 U.S.C. 7213(a)(1)**</u>

§ 7213. Auditing, quality control, and independence standards and rules

**(a) Auditing, quality control, and ethics standards**

   **(1) In general**

   The Board shall, by rule, establish, including, to the extent it determines appropriate, through adoption of standards proposed by 1 or more professional groups of accountants designated pursuant to paragraph (3)(A) or advisory groups convened pursuant to paragraph (4), and amend or otherwise modify or alter, such auditing and related attestation standards, such quality control standards, such ethics standards, and such independence standards to be used by registered public accounting firms in the preparation and issuance of audit reports, as required by this Act or the rules of the Commission, or as may be necessary or appropriate in the public interest or for the protection of investors.

## **15 U.S.C. 7215(a), (b)(1), (c), (e)**

**§ 7215. Investigations and disciplinary proceedings**

**(a) In general**

The Board shall establish, by rule, subject to the requirements of this section, fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms.

**(b) Investigations**

**(1) Authority**

In accordance with the rules of the Board, the Board may conduct an investigation of any act or practice, or omission to act, by a registered public accounting firm, any associated person of such firm, or both, that may violate any provision of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission issued under this Act, or professional standards, regardless of how the act, practice, or omission is brought to the attention of the Board.

**...**

**(c) Disciplinary procedures**

**(1) Notification; recordkeeping**

The rules of the Board shall provide that in any proceeding by the Board to determine whether a registered public accounting firm, or an associated person thereof, should be disciplined, the Board shall--

**(A)** bring specific charges with respect to the firm or associated person;

**(B)** notify such firm or associated person of, and provide to the firm or associated person an opportunity to defend against, such charges; and

**(C)** keep a record of the proceedings.

**(2) Public hearings**

Hearings under this section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing.

**(3) Supporting statement**

A determination by the Board to impose a sanction under this subsection shall be supported by a statement setting forth--

**(A)** each act or practice in which the registered public accounting firm, or associated person, has engaged (or omitted to engage), or that forms a basis for all or a part of such sanction;

**(B)** the specific provision of this Act, the securities laws, the rules of the Board, or professional standards which the Board determines has been violated; and

**(C)** the sanction imposed, including a justification for that sanction.

**(4) Sanctions**

If the Board finds, based on all of the facts and circumstances, that a registered public accounting firm or associated person thereof has engaged in any act or practice, or omitted to act, in violation of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission issued under this Act, or professional standards, the Board may impose such disciplinary or remedial sanctions as it determines appropriate, subject to applicable limitations under paragraph (5), including--

**(A)** temporary suspension or permanent revocation of registration under this subchapter;

**(B)** temporary or permanent suspension or bar of a person from further association with any registered public accounting firm;

**(C)** temporary or permanent limitation on the activities, functions, or operations of such firm or person (other than in connection with required additional professional education or training);

**(D)** a civil money penalty for each such violation, in an amount equal to--

**(i)** not more than $100,000 for a natural person or $2,000,000 for any other person; and

**(ii)** in any case to which paragraph (5) applies, not more than $750,000 for a natural person or $15,000,000 for any other person;

**(E)** censure;

**(F)** required additional professional education or training; or

**(G)** any other appropriate sanction provided for in the rules of the Board.

**(5) Intentional or other knowing conduct**

The sanctions and penalties described in subparagraphs (A) through (C) and (D)(ii) of paragraph (4) shall only apply to--

**(A)** intentional or knowing conduct, including reckless conduct, that results in violation of the applicable statutory, regulatory, or professional standard; or

**(B)** repeated instances of negligent conduct, each resulting in a violation of the applicable statutory, regulatory, or professional standard.

**(6) Failure to supervise**

**(A) In general**

The Board may impose sanctions under this section on a registered accounting firm or upon any person who is, or at the time of the alleged failure reasonably to supervise was, a supervisory person of such firm, if the Board finds that--

**(i)** the firm has failed reasonably to supervise an associated person, either as required by the rules of the Board relating to auditing or quality control standards, or otherwise, with a view to preventing violations of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission under this Act, or professional standards; and

**(ii)** such associated person commits a violation of this Act, or any of such rules, laws, or standards.

**(B) Rule of construction**

No current or former supervisory person of a registered public accounting firm shall be deemed to have failed reasonably to supervise any associated person for purposes of subparagraph (A), if--

**(i)** there have been established in and for that firm procedures, and a system for applying such procedures, that comply with applicable rules of the Board and that would reasonably be expected to prevent and detect any such violation by such associated person; and

**(ii)** such person has reasonably discharged the duties and obligations incumbent upon that person by reason of such procedures and system, and had no reasonable cause to believe that such procedures and system were not being complied with.

**(7) Effect of suspension**

**(A) Association with a public accounting firm**

It shall be unlawful for any person that is suspended or barred from being associated with a registered public accounting firm under this subsection willfully to become or remain associated with any registered public accounting firm, or for any registered public accounting firm that knew, or, in the exercise of reasonable care should have known, of the suspension or bar, to permit such an association, without the consent of the Board or the Commission.

**(B) Association with an issuer, broker, or dealer**

It shall be unlawful for any person that is suspended or barred from being associated with a registered public accounting firm under this subsection willfully to become or remain associated with any issuer, broker, or dealer in an accountancy or a financial management capacity, and for any issuer, broker, or dealer that knew, or in the exercise of reasonable care should have known, of such suspension or bar, to permit such an association, without the consent of the Board or the Commission.

**...**

**(e) Stay of sanctions**

**(1) In general**

Application to the Commission for review, or the institution by the Commission of review, of any disciplinary action of the Board shall operate as a stay of any such disciplinary action, unless and until the Commission orders (summarily or after notice and opportunity for hearing on the question of a stay, which hearing may consist solely of the submission of affidavits or presentation of oral arguments) that no such stay shall continue to operate.

**(2) Expedited procedures**

The Commission shall establish for appropriate cases an expedited procedure for consideration and determination of the question of the duration of a stay pending review of any disciplinary action of the Board under this subsection.

**<u>15 U.S.C. 7217(a), (c)</u>**

§ 7217. Commission oversight of the Board

**(a) General oversight responsibility**
The Commission shall have oversight and enforcement authority over the Board, as provided in this Act. The provisions of section 78q(a)(1) of this title, and of section 78q(b)(1) of this title shall apply to the Board as fully as if the Board were a "registered securities association" for purposes of those sections 78q(a)(1) and 78(b)(1).

**...**

**(c) Commission review of disciplinary action taken by the Board**
   **(1) Notice of sanction**
   The Board shall promptly file notice with the Commission of any final sanction on any registered public accounting firm or on any associated person thereof, in such form and containing such information as the Commission, by rule, may prescribe.
   **(2) Review of sanctions**
   The provisions of sections 78s(d)(2) and 78s(e)(1) of this title shall govern the review by the Commission of final disciplinary sanctions imposed by the Board (including sanctions imposed under section 7215(b)(3) of this title for noncooperation in an investigation of the Board), as fully as if the Board were a self-regulatory organization and the Commission were the appropriate regulatory agency for such organization for purposes of those sections 78s(d)(2) and 78s(e)(1), except that, for purposes of this paragraph--
      **(A)** section 7215(e) of this title (rather than that section 78s(d)(2)) shall govern the extent to which application for, or institution by the Commission on its own motion of, review of any disciplinary action of the Board operates as a stay of such action;
      **(B)** references in that section 78s(e)(1) to "members" of such an organization shall be deemed to be references to registered public accounting firms;

**(C)** the phrase "consistent with the purposes of this chapter" in that section 78s(e)(1) shall be deemed to read "consistent with the purposes of this chapter and title I of the Sarbanes-Oxley Act of 2002";

**(D)** references to rules of the Municipal Securities Rulemaking Board in that section 78s(e)(1) shall not apply; and

**(E)** the reference to section 78s(e)(2) of this title shall refer instead to section 7217(c)(3) of this title.

**(3) Commission modification authority**

The Commission may enhance, modify, cancel, reduce, or require the remission of a sanction imposed by the Board upon a registered public accounting firm or associated person thereof, if the Commission, having due regard for the public interest and the protection of investors, finds, after a proceeding in accordance with this subsection, that the sanction--

**(A)** is not necessary or appropriate in furtherance of this Act or the securities laws; or

**(B)** is excessive, oppressive, inadequate, or otherwise not appropriate to the finding or the basis on which the sanction was imposed.

## **28 U.S.C. 1658**

§ 1658. Time limitations on the commencement of civil actions arising under Acts of Congress

**(a)** Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

**(b)** Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--

    **(1)** 2 years after the discovery of the facts constituting the violation; or

    **(2)** 5 years after such violation.

## PCAOB Rule 3100

**Rule 3100. Compliance with Auditing and Related Professional Practice Standards.**

A registered public accounting firm and its associated persons shall comply with all applicable auditing and related professional practice standards.

## PCAOB Rule 4006

**Rule 4006. Duty to Cooperate With Inspectors**

Every registered public accounting firm, and every associated person of a registered public accounting firm, shall cooperate with the Board in the performance of any Board inspection. Cooperation shall include, but is not limited to, cooperating and complying with any request, made in furtherance of the Board's authority and responsibilities under the Act, to –

(a) provide access to, and the ability to copy, any record in the possession, custody, or control of such firm or person, and

(b) provide information by oral interviews, written responses, or otherwise.

16a

## <u>PCAOB Rule 5422(b)</u>

**Rule 5422.  Availability of Documents For Inspection and Copying**

…

**(b) Documents That May Be Withheld**

(1) The interested division may decline to make available for inspection and copying –

(i) any document prepared by, a member of the Board or of the Board's staff, or persons retained by the Board or Board staff to provide services in connection with the investigation, disciplinary proceeding, or hearing on disapproval of registration, provided that the document has not been disclosed to any person other than Board members, Board staff, or persons retained by the Board or Board staff as described above;

(ii) any document accessed from generally available public sources, such as legal research or other subscription databases, databases of securities filings, databases of periodicals, and public web sites, except to the extent that the interested division intends to introduce such documents as evidence;

(iii) any other document that is privileged, including any other document protected by the attorney work product doctrine;

(iv) any document that would disclose the identity of a confidential source; and

(v) any other document that the staff identifies for the hearing officer's consideration as to whether the document may be withheld as not relevant to the subject matter of the proceeding or otherwise for good cause shown.

(2) Nothing in this paragraph (b), or in paragraph (a)(2) above, authorizes the interested division in connection with a disciplinary proceeding or hearing on disapproval of registration to withhold documents that contain material exculpatory evidence.



PCAOB Release 2004-006
June 9, 2004
Page A1–2 – Standard

**RELEASE**

**Auditing and Related Professional Practice Standards**

**Auditing Standard No. 3, *Audit Documentation***
**[supersedes SAS No. 96, *Audit Documentation*]**

# Introduction

1.     This standard establishes general requirements for documentation the auditor should prepare and retain in connection with engagements conducted pursuant to the standards of the Public Company Accounting Oversight Board ("PCAOB").   Such engagements include an audit of financial statements, an audit of internal control over financial reporting, and a review of interim financial information.  This standard does not replace specific documentation requirements of other standards of the PCAOB.

**Objectives of Audit Documentation**

2.     *Audit documentation* is the written record of the basis for the auditor's conclusions that provides the support for the auditor's representations, whether those representations are contained in the auditor's report or otherwise.  Audit documentation also facilitates the planning, performance, and supervision of the engagement, and is the basis for the review of the quality of the work because it provides the reviewer with written documentation of the evidence supporting the auditor's significant conclusions.  Among other things, audit documentation includes records of the planning and performance of the work, the procedures performed, evidence obtained, and conclusions reached by the auditor.  Audit documentation also may be referred to as *work papers* or *working papers*.

> Note:  An auditor's representations to a company's board of directors or audit committee, stockholders, investors, or other interested parties are usually included in the auditor's report accompanying the financial statements of the company.  The auditor also might make oral representations to the company or others, either on a voluntary basis or if necessary to comply with professional standards, including in connection with an engagement for which an auditor's report is not issued.  For example, although an auditor might not issue a report in connection with an engagement to review interim financial information, he or she ordinarily would make oral representations about the results of the review.



## RELEASE

3.    Audit documentation is reviewed by members of the engagement team performing the work and might be reviewed by others.  Reviewers might include, for example:

    a.    Auditors who are new to an engagement and review the prior year's documentation to understand the work performed as an aid in planning and performing the current engagement.

    b.    Supervisory personnel who review documentation prepared by assistants on the engagement.

    c.    Engagement supervisors and engagement quality reviewers who review documentation to understand how the engagement team reached significant conclusions and whether there is adequate evidential support for those conclusions.

    d.    A successor auditor who reviews a predecessor auditor's audit documentation.

    e.    Internal and external inspection teams that review documentation to assess audit quality and compliance with auditing and related professional practice standards; applicable laws, rules, and regulations; and the auditor's own quality control policies.

    f.    Others, including advisors engaged by the audit committee or representatives of a party to an acquisition.

**Audit Documentation Requirement**

4.    The auditor must prepare audit documentation in connection with each engagement conducted pursuant to the standards of the PCAOB.  Audit documentation should be prepared in sufficient detail to provide a clear understanding of its purpose, source, and the conclusions reached.  Also, the documentation should be appropriately



## RELEASE

organized to provide a clear link to the significant findings or issues.[1/]  Examples of audit documentation include memoranda, confirmations, correspondence, schedules, audit programs, and letters of representation.  Audit documentation may be in the form of paper, electronic files, or other media.

5.      Because audit documentation is the written record that provides the support for the representations in the auditor's report, it should:

      a.      Demonstrate that the engagement complied with the standards of the PCAOB,

      b.      Support the basis for the auditor's conclusions concerning every relevant financial statement assertion, and

      c.      Demonstrate that the underlying accounting records agreed or reconciled with the financial statements.

6.      The auditor must document the procedures performed, evidence obtained, and conclusions reached with respect to relevant financial statement assertions.[2/]  Audit documentation must clearly demonstrate that the work was in fact performed.  This documentation requirement applies to the work of all those who participate in the engagement as well as to the work of specialists the auditor uses as evidential matter in evaluating relevant financial statement assertions.  Audit documentation must contain sufficient information to enable an experienced auditor, having no previous connection with the engagement:

      a.      To understand the nature, timing, extent, and results of the procedures performed, evidence obtained, and conclusions reached, and

---

[1/]      See paragraph 12 of this standard for a description of significant findings or issues.

[2/]      *Relevant financial statement assertions* are described in paragraphs 68-70 of PCAOB Auditing Standard No. 2, *An Audit of Internal Control Over Financial Reporting Performed in Conjunction with An Audit of Financial Statements.*



**RELEASE**

> b.  To determine who performed the work and the date such work was completed as well as the person who reviewed the work and the date of such review.
>
> Note:  An *experienced auditor* has a reasonable understanding of audit activities and has studied the company's industry as well as the accounting and auditing issues relevant to the industry.

7.    In determining the nature and extent of the documentation for a financial statement assertion, the auditor should consider the following factors:

- Nature of the auditing procedure;

- Risk of material misstatement associated with the assertion;

- Extent of judgment required in performing the work and evaluating the results, for example, accounting estimates require greater judgment and commensurately more extensive documentation;

- Significance of the evidence obtained to the assertion being tested; and

- Responsibility to document a conclusion not readily determinable from the documentation of the procedures performed or evidence obtained.

Application of these factors determines whether the nature and extent of audit documentation is adequate.

8.    In addition to the documentation necessary to support the auditor's final conclusions, audit documentation must include information the auditor has identified relating to significant findings or issues that is inconsistent with or contradicts the auditor's final conclusions.  The relevant records to be retained include, but are not limited to, procedures performed in response to the information, and records documenting consultations on, or resolutions of, differences in professional judgment among members of the engagement team or between the engagement team and others consulted.



## RELEASE

9.    If, after the documentation completion date (defined in paragraph 15), the auditor becomes aware, as a result of a lack of documentation or otherwise, that audit procedures may not have been performed, evidence may not have been obtained, or appropriate conclusions may not have been reached, the auditor must determine, and if so demonstrate, that sufficient procedures were performed, sufficient evidence was obtained, and appropriate conclusions were reached with respect to the relevant financial statement assertions.  To accomplish this, the auditor must have persuasive other evidence.  Oral explanation alone does not constitute persuasive other evidence, but it may be used to clarify other written evidence.

- If the auditor determines and demonstrates that sufficient procedures were performed, sufficient evidence was obtained, and appropriate conclusions were reached, but that documentation thereof is not adequate, then the auditor should consider what additional documentation is needed.  In preparing additional documentation, the auditor should refer to paragraph 16.

- If the auditor cannot determine or demonstrate that sufficient procedures were performed, sufficient evidence was obtained, or appropriate conclusions were reached, the auditor should comply with the provisions of AU sec. 390, *Consideration of Omitted Procedures After the Report Date.*

**Documentation of Specific Matters**

10.    Documentation of auditing procedures that involve the inspection of documents or confirmation, including tests of details, tests of operating effectiveness of controls, and walkthroughs, should include identification of the items inspected.  Documentation of auditing procedures related to the inspection of significant contracts or agreements should include abstracts or copies of the documents.

Note:  The identification of the items inspected may be satisfied by indicating the source from which the items were selected and the specific selection criteria, for example:



**RELEASE**

- If an audit sample is selected from a population of documents, the documentation should include identifying characteristics (for example, the specific check numbers of the items included in the sample).

- If all items over a specific dollar amount are selected from a population of documents, the documentation need describe only the scope and the identification of the population (for example, all checks over $10,000 from the October disbursements journal).

- If a systematic sample is selected from a population of documents, the documentation need only provide an identification of the source of the documents and an indication of the starting point and the sampling interval (for example, a systematic sample of sales invoices was selected from the sales journal for the period from October 1 to December 31, starting with invoice number 452 and selecting every 40th invoice).

11.     Certain matters, such as auditor independence, staff training and proficiency and client acceptance and retention, may be documented in a central repository for the public accounting firm ("firm") or in the particular office participating in the engagement. If such matters are documented in a central repository, the audit documentation of the engagement should include a reference to the central repository. Documentation of matters specific to a particular engagement should be included in the audit documentation of the pertinent engagement.

12.     The auditor must document significant findings or issues, actions taken to address them (including additional evidence obtained), and the basis for the conclusions reached in connection with each engagement. *Significant findings or issues* are substantive matters that are important to the procedures performed, evidence obtained, or conclusions reached, and include, but are not limited to, the following:

a.      Significant matters involving the selection, application, and consistency of accounting principles, including related disclosures. Significant matters include, but are not limited to, accounting for complex or unusual transactions, accounting estimates, and uncertainties as well as related management assumptions.

23a



**RELEASE**

b.   Results of auditing procedures that indicate a need for significant modification of planned auditing procedures, the existence of material misstatements, omissions in the financial statements, the existence of significant deficiencies, or material weaknesses in internal control over financial reporting.

c.   Audit adjustments.  For purposes of this standard, an *audit adjustment* is a correction of a misstatement of the financial statements that was or should have been proposed by the auditor, whether or not recorded by management, that could, either individually or when aggregated with other misstatements, have a material effect on the company's financial statements.

d.   Disagreements among members of the engagement team or with others consulted on the engagement about final conclusions reached on significant accounting or auditing matters.

e.   Circumstances that cause significant difficulty in applying auditing procedures.

f.   Significant changes in the assessed level of audit risk for particular audit areas and the auditor's response to those changes.

g.   Any matters that could result in modification of the auditor's report.

13.   The auditor must identify all significant findings or issues in an *engagement completion document*.  This document may include either all information necessary to understand the significant findings, issues or cross-references, as appropriate, to other available supporting audit documentation.  This document, along with any documents cross-referenced, should collectively be as specific as necessary in the circumstances for a reviewer to gain a thorough understanding of the significant findings or issues.

Note:  The engagement completion document prepared in connection with the annual audit should include documentation of significant findings or issues identified during the review of interim financial information.



## RELEASE

**Retention of and Subsequent Changes to Audit Documentation**

14.     The auditor must retain audit documentation for seven years from the date the auditor grants permission to use the auditor's report in connection with the issuance of the company's financial statements (*report release date*), unless a longer period of time is required by law. If a report is not issued in connection with an engagement, then the audit documentation must be retained for seven years from the date that fieldwork was substantially completed.  If the auditor was unable to complete the engagement, then the audit documentation must be retained for seven years from the date the engagement ceased.

15.     Prior to the report release date, the auditor must have completed all necessary auditing procedures and obtained sufficient evidence to support the representations in the auditor's report.  A complete and final set of audit documentation should be assembled for retention as of a date not more than 45 days after the report release date (*documentation completion date*).  If a report is not issued in connection with an engagement, then the documentation completion date should not be more than 45 days from the date that fieldwork was substantially completed.  If the auditor was unable to complete the engagement, then the documentation completion date should not be more than 45 days from the date the engagement ceased.

16.     Circumstances may require additions to audit documentation after the report release date.  Audit documentation must not be deleted or discarded after the documentation completion date, however, information may be added.  Any documentation added must indicate the date the information was added, the name of the person who prepared the additional documentation, and the reason for adding it.

17.     Other standards require the auditor to perform procedures subsequent to the report release date in certain circumstances.  For example, in accordance with AU sec. 711, *Filings Under Federal Securities Statutes*, auditors are required to perform certain procedures up to the effective date of a registration statement.[3/]  The auditor must identify and document any additions to audit documentation as a result of these procedures consistent with the previous paragraph.

---

[3/]     Section 11 of the Securities Act of 1933 makes specific mention of the auditor's responsibility as an expert when the auditor's report is included in a registration statement under the 1933 Act.



## RELEASE

18. The office of the firm issuing the auditor's report is responsible for ensuring that all audit documentation sufficient to meet the requirements of paragraphs 4-13 of this standard is prepared and retained. Audit documentation supporting the work performed by other auditors (including auditors associated with other offices of the firm, affiliated firms, or non-affiliated firms), must be retained by or be accessible to the office issuing the auditor's report.[4/]

19. In addition, the office issuing the auditor's report must obtain, and review and retain, prior to the report release date, the following documentation related to the work performed by other auditors (including auditors associated with other offices of the firm, affiliated firms, or non-affiliated firms):

    a.    An engagement completion document consistent with paragraphs 12 and 13.

    Note:    This engagement completion document should include all cross-referenced, supporting audit documentation.

    b.    A list of significant fraud risk factors, the auditor's response, and the results of the auditor's related procedures.

    c.    Sufficient information relating to any significant findings or issues that are inconsistent with or contradict the final conclusions, as described in paragraph 8.

    d.    Any findings affecting the consolidating or combining of accounts in the consolidated financial statements.

    e.    Sufficient information to enable the office issuing the auditor's report to agree or to reconcile the financial statement amounts audited by the other auditor to the information underlying the consolidated financial statements.

---

[4/] Section 106(b) of the Sarbanes-Oxley Act of 2002 imposes certain requirements concerning production of the work papers of a foreign public accounting firm on whose opinion or services the auditor relies. Compliance with this standard does not substitute for compliance with Section 106(b) or any other applicable law.



**RELEASE**

>  f.  A schedule of audit adjustments, including a description of the nature and cause of each misstatement.
>
>  g.  All significant deficiencies and material weaknesses in internal control over financial reporting, including a clear distinction between those two categories.
>
>  h.  Letters of representations from management.
>
>  i.  All matters to be communicated to the audit committee.

If the auditor decides to make reference in his or her report to the audit of the other auditor, however, the auditor issuing the report need not perform the procedures in this paragraph and, instead, should refer to AU sec. 543, *Part of Audit Performed by Other Independent Auditors.*

20.  The auditor also might be required to maintain documentation in addition to that required by this standard.[5/]

**Effective Date**

21.  This standard is effective for audits of financial statements, which may include an audit of internal control over financial reporting, with respect to fiscal years ending on or after [the later of November 15, 2004, or 30 days after the date of approval of this standard by the SEC]. For other engagements conducted pursuant to the standards of the PCAOB, including reviews of interim financial information, this standard takes effect beginning with the first quarter ending after the first financial statement audit covered by this standard.

---

[5/]  For example, the SEC requires auditors to retain, in addition to documentation required by this standard, memoranda, correspondence, communications (for example, electronic mail), other documents, and records (in the form of paper, electronic, or other media) that are created, sent, or received in connection with an engagement conducted in accordance with auditing and related professional practice standards and that contain conclusions, opinions, analyses, or data related to the engagement. (*Retention of Audit and Review Records*, 17 CFR §210.2-06, effective for audits or reviews completed on or after October 31, 2003.)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 1, 2017. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Emily T.P. Rosen*
Emily T.P. Rosen